UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

ROBINSON BERMUDEZ,

Plaintiff,

-against-

No. 15-cv-3240 (KAM) (RLM)

CITY OF NEW YORK, LIEUTENANT MICHAEL EDMONDS, SERGEANT JONATHAN PEYER, POLICE OFFICER MATTHEW HYNES, POLICE OFFICER CHRISTOPHER DISTEFANO and POLICE OFFICER NICHOLAS RUIZ,

Defendants.-
---------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT OPINION OF ALI GUY, M.D.**

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By: Brachah Goykadosh
*Assistant Corporation Counsel*
Special Federal Litigation Division
(212) 356-3523

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ii

PRELIMINARY STATEMENT 1

SUMMARY OF DR. ALI GUY'S EXPERT OPINION 1

LEGAL STANDARD FOR ADMISSION OF EXPERT TESTIMONY 2

ARGUMENT 4

POINT I 4

THE COURT SHOULD PRECLUDE DR. GUY'S REPORT AND TESTIMONY BECAUSE HE IS NOT QUALIFIED 4

POINT II 7

THE COURT SHOULD PRECLUDE DR. GUY'S REPORT AND TESTIMONY BECAUSE IT IS NOT RELIABLE 7

POINT III 11

THE COURT SHOULD PRECLUDE GUY'S REPORT AND TESTIMONY BECAUSE IT IS NOT HELPFUL OR RELEVANT 11

CONCLUSION 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)....8

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
222 F. Supp. 2d 423 (S.D.N.Y. 2002)....3

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (1996)....8

*Bridgeway Corp. v. Citibank*,
201 F.3d 134 (2d Cir. 2000)....8

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*,
No. 99 Civ. 1725, 2003 U.S. Dist. LEXIS 6150 (S.D.N.Y. Apr. 11, 2003)....4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).... *passim*

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....8

*Giles v. Rhodes*,
No. 94 Civ. 6385 (CSH), 2000 U.S. Dist. LEXIS 13980 (S.D.N.Y. Sept. 26, 2000)....3

*Haimdas v. Haimdas*,
09-cv-2034 (ENV) (MDG), 2010 U.S. Dist. LEXIS 15394 (E.D.N.Y. Feb. 22, 2010)....5

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....12

*Estate of Jaquez v. City of New York.*,
104 F. Supp. 3d 414 (S.D.N.Y. 2015).... *passim*

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....2, 8

*Lippe v. Bairnco Corp.*,
288 B.R. 678 (S.D.N.Y. 2003)....3

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008)....................................................................................2, 8, 9

Malletier v. Dooney & Bourke, Inc.,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)..........................................................................5

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358, M21-88*,
2008 U.S. Dist. LEXIS 37331 (S.D.N.Y. May 7, 2008)..........................................................5

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)....................................................................................3, 4, 12

*In re Rezulin Prods.*,
309 F. Supp. 2d at 541 ..........................................................................................12

*Silvestro v. City of New York*,
No. 06-CV-646 (KAM)(VVP), 2009 U.S. Dist. LEXIS 134117 (E.D.N.Y. Jan. 9, 2009) ..........................................................................................7, 9

*Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
489 F. Supp. 2d 230 (E.D.N.Y. 2007) ...........................................................8, 11, 12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 457(S.D.N.Y. 2007)..........................................................................4

*Travelers Ind. Co. v. Northrop Grumman Corp.*,
12 Civ. 3040 (KBG), 2014 U.S. Dist. LEXIS 14981 (S.D.N.Y. Jan. 7, 2015)....................4, 11

*United States v. Amuso*,
21 F.3d 1251 (2d Cir. 1994).....................................................................................13

*United States v. Mulder*,
273 F.3d 91 (2d Cir. 2001).......................................................................................11

*United States v. Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004).........................................................................................5

*United States v. Williams*,
506 F.3d 151 (2d Cir. 2007).......................................................................................3

*Zaremba v. Gen. Motors Corp.*,
360 F.3d 355 (2d Cir. 2004).......................................................................................4

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT OPINION OF ALI GUY, M.D.

## PRELIMINARY STATEMENT

On March 1, 2015, as plaintiff resisted his lawful arrest, force was employed to apprehend plaintiff. This force included the use of an asp. Plaintiff now sues claiming that the force was excessive and that he suffers medical injuries resulting from the force. During expert discovery, plaintiff proffered identified Dr. Ali Guy, a physiatrist, as an expert and produced two expert reports by Dr. Guy. These reports diagnose plaintiff with a list of ailments. But Dr. Guy's expert testimony should not be admitted at trial. The reason for this is tri-fold: Dr. Guy is not qualified, not reliable, and not helpful. More specifically, Dr. Guy does not have any particular specialization in the areas that he wishes to provide expert testimony on; he does not provide anything more than conclusions and conjecture; and for injuries like "trauma" or "lacerations," his testimony is not helpful and would be cumulative. The admission of Dr. Guy's testimony would be a manifest error. Therefore, the Court should exercise its gatekeeping function and preclude the expert opinion of Dr. Ali Guy at trial.

## SUMMARY OF DR. ALI GUY'S EXPERT OPINION

Dr. Guy is a physiatrist. (*See* Resume of Dr. Ali E. Guy (hereinafter "Guy Resume) annexed to the Declaration of Brachah Goykadosh dated September 20, 2018 (hereinafter "Goykadosh Decl.") as Exhibit "A"). After reviewing plaintiff's deposition, medical records, and after a physical examination, Dr. Guy "diagnosed" plaintiff with what appears to be ten separate diagnoses.[1] (*See* Expert Report of Dr. Ali Guy dated June 5, 2016 (hereinafter "First Guy Report"), annexed to the Goykadosh Decl. as Exhibit "B;" *see also* Second Report of Dr.

---

[1] Two of the diagnoses are preceded with the term "rule out." It is unclear from the expert reports whether Dr. Guy is saying that these diagnoses have been ruled out or should be ruled out, as Dr. Guy indicates that further testing is necessary.

Ali Guy (hereinafter "Second Guy Report") annexed to the Goykadosh Decl. as Exhibit "C"). These injuries include "multiple traumas with laceration to the occipital area and left temporal area […] with vertigo and tinnitus;" "postconcussion syndrome and reactive posttraumatic stress syndrome with reactive anxiety and depression;" "left hearing loss with tinnitus;" "shoulder trauma," "gait disturbance" and "posttraumatic headache." Dr. Guy is not an expert in medical fields such as neurology, orthopedics, or otolaryngology and therefore not qualified to give his opinion as an expert. Furthermore, his methodology is not reliable. Finally, for alleged injuries like "trauma" or "pain," Dr. Guy's opinion is not helpful and would be cumulative. Therefore, the Court should preclude it.

## LEGAL STANDARD FOR ADMISSION OF EXPERT TESTIMONY

The Supreme Court has assigned to district courts a "gatekeeping" role with respect to expert opinion testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (holding that it is the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable"). *See also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). This "gatekeeping" function applies whether the expert testimony is based on scientific, or on technical or "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "The 'overarching subject' of the Rule 702 inquiry is 'the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions they generate.'" *Estate of Jaquez v. City of New York.*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), quoting *Daubert*, 509 U.S. at 595.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> FED. R. EVID. 702.

The Court's inquiry to determine whether a proposed expert's testimony passes muster under Rule 702 therefore focuses on three issues: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005).

The party seeking to rely on expert testimony—plaintiff here—bears the burden of establishing a preponderance of the evidence, that all the requirements have been met. *See Daubert*, 509 U.S. at 593, n.10; *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *Pension Comm.*, 691 F. Supp. 2d at 468 n.111, quoting *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007)). *See also Lippe v. Bairnco Corp.*, 288 B.R. 678, 685 (S.D.N.Y. 2003) ("It is the proponent's burden to establish admissibility, rather than the opponent's burden to establish inadmissibility." (internal citations omitted)); *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 487 (S.D.N.Y. 2002) (citing FED. R. EVID. 104(a) and *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Giles v. Rhodes*, No. 94 Civ. 6385 (CSH), 2000 U.S. Dist. LEXIS 13980, at *61 (S.D.N.Y. Sept.

26, 2000) (proponent of expert testimony bears the burden of demonstrating that it is "competent and reliable"). For the reasons described *infra*, plaintiff fails to meet this burden.

## ARGUMENT

### POINT I

### THE COURT SHOULD PRECLUDE DR. GUY'S REPORT AND TESTIMONY BECAUSE HE IS NOT QUALIFIED

Dr. Guy is a physical medicine and rehabilitation specialist; he is not an orthopedist or neurologist. Therefore, the Court should preclude his testimony as he is not qualified. Whether a purported expert witness is qualified as an expert by his or her "knowledge, skill, experience, training, or education," FED. R. EVID. 702, is a "threshold question" to be resolved prior to the other inquires. *Nimley*, 414 F.3d at 396, n.11; *Travelers Ind. Co. v. Northrop Grumman Corp.*, 12 Civ. 3040 (KBG), 2014 U.S. Dist. LEXIS 14981, at *7 (S.D.N.Y. Jan. 7, 2015); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004) (where an expert witness is insufficiently qualified, an analysis of the remaining factors "seems almost superfluous"). The Second Circuit has explained that this question is particularly important "because an 'expert' witness is permitted substantially more leeway than 'lay' witnesses in testifying as to opinions that are not 'rationally based on [his or her] perception.'" *Nimely*, 414 F.3d at 396, n.11 (quoting *United States v. Garcia*, 291 F.3d 127, 139 & n. 8 (2d Cir. 2002)).

In order to determine whether a witness is qualified to render an expert opinion, a court "must first ascertain whether the proffered expert has the educational background or training in a relevant field." *Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725, 2003 U.S. Dist. LEXIS 6150, at *4 (S.D.N.Y. Apr. 11, 2003) (citation omitted). A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, experience, training or education. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457,

458(S.D.N.Y. 2007) (citing 4 Jack B. Weinstein, Weinstein's Federal Evidence § 702.04[1][c] (2d ed. 2006)).

The court must then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). The court must ensure that the expert will be testifying "on issues or subject matter[s] within his or her area of expertise." *Haimdas v. Haimdas*, 09-cv-2034 (ENV) (MDG), 2010 U.S. Dist. LEXIS 15394, at *6 (E.D.N.Y. Feb. 22, 2010) (citing *Stagl v. Delta Air Lines*, 117 F.3d 76, 80 (2d Cir. 1997)). "[A]n expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358, M21-88*, 2008 U.S. Dist. LEXIS 37331, at *20, n.48 (S.D.N.Y. May 7, 2008). *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007) ("An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702.").

Although Dr. Guy is trained as a medical doctor, when the Court compares Dr. Guy's area of "superior knowledge, education, experience or skill with the subject matter of the proffered testimony," *Tin Yat Chin*, 371 F. 3d at 40, it will discover that Dr. Guy is not qualified. Specifically, Dr. Guy is not qualified to testify about the long laundry list of injuries that plaintiff claims—which include (1) vertigo; (2) nausea, (3) "trauma;" (4) hearing loss due to head trauma; (5) hearing loss associated with ringing tinnitus (6) depression; (7) dizziness; (8) neck pain; (9) lower back pain; (10) left and right ankle pain; (11) loss of consciousness; (12) swelling; (13) stiffness; (14) numbness of the right hand; (15) tingling of the left wrist; (16) tingling of the right leg; (17) blurred vision; (18) difficulty ambulating and bending and lifting; (19) scarring on

the back of head; (20) limitation of motion on both knees; (21) lumbar spine limitation of motion and movement and pain and tenderness; (22) difficulty sleeping; (23) occipital pain; and (24) numbness of the fingertips—as most, if not all of these injuries, are not within his subject area of expertise. Indeed, Dr. Guy is a physiatrist. (*See* Guy Resume, Goykadosh Decl., Exhibit "A"). This specialty is concerned with "treating disorders or disability of the muscles, bones, and nervous system." *See* ABPMR, About, https://www.abpmr.org/About (last visited Sep. 14, 2018). But while Dr. Guy may treat and see range of "disabilities" of the muscle, bones, and nervous system this is a far cry from actually being an expert on orthopedic, neurological, or otolaryngological issues. Nor does it somehow elevate him to an expert in any of these fields.

Moreover, Dr. Guy has no specialized knowledge in the specific field that plaintiff seeks to proffer his testimony for. While as a physiatrist, Dr. Guy "may see some of everything" that "does not make" him into an "expert[] in everything." *Jaquez*, 104 F.Supp. 3d at 429, citing *Nimely*, 414 F.3d at 399 n.13 ("[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields"). In qualifying an expert, the Court is not looking for a jack of all trades—but a master of one.

Simply, Dr. Guy's is not qualified to testify as an expert[2] on plaintiff's long list of injuries. He is not an expert on these issues. His advanced degree in medicine should not automatically qualify him as an expert in all fields. Indeed, the "mere possession of a medical degree does not qualify one to be an expert in all medically related fields." *Jaquez.*, 104 F. Supp. 3d at 429, citing *In re Fosamax Products Liability Litigation*, 807 F. Supp. 2d 168, 183

[2] Some injuries that plaintiff claims he suffered as a result of the use of force—such as "pain"—do not require expert testimony as they are within the province of the jury. Indeed, it is not necessary for Dr. Guy to testify about matters that plaintiff can testify about. *See infra* at Point III; *see also* FED. R. EVID. 403 (cumulative).

(S.D.N.Y. 2011). Any testimony Dr. Guy would offer would be on a subject area that is unrelated to his area of expertise. Therefore, Dr. Guy's testimony is prohibited under Rule 702.

## POINT II

## THE COURT SHOULD PRECLUDE DR. GUY'S REPORT AND TESTIMONY BECAUSE IT IS NOT RELIABLE

Even if the Court finds that Dr. Guy has "sufficient professional credentials to qualify as an expert" as his testimony should be precluded as it is not reliable.

The Court can disqualify an expert when that expert "fails to employ investigative techniques sufficient to give a reliable opinion" and "is unable to explain the technical basis for his opinion," he should still be disqualified from offering his opinion at trial. *Silvestro v. City of New York*, No. 06-CV-646 (KAM)(VVP), 2009 U.S. Dist. LEXIS 134117, at *7 (E.D.N.Y. Jan. 9, 2009), citing *Mannix v. Chrysler Corp.*, No. 96-cv-1944, 2001 U.S. Dist. LEXIS 4641 (E.D.N.Y. March 4, 2001). A district court has discretion under Rule 703 to "determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Silvestro*, 2009 U.S. Dist. LEXIS 134117, at *7, quoting *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1994).

In determining reliability, the Court must also ensure that the witness is proposing to testify to knowledge that both "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In *Daubert*, the Supreme Court identified factors that may bear upon the reliability of proposed scientific testimony, including: (1) whether the theory or technique can be, and has been, tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or theory has gained widespread acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94

(noting that these factors do not constitute "a definitive checklist or test"). Under the court's "gatekeeping" function, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. "Subjective methodology, as well as testimony that is insufficiently connected to the facts of the case" can serve as "grounds for rejection of expert testimony." *Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007).

Conclusory opinions should not be admitted by this Court. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Even "otherwise qualified experts may not simply offer conclusory opinions." *Jaquez*, 104 F. Supp. 3d at 426, citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir. 2000). "Conclusory opinions are a form of 'ipse dixit,' and often provide an insufficient basis upon which to assess reliability." *Jaquez*, 104 F. Supp. 3d at 426, citing *Nimely*, 414 F.3d at 396. Indeed, a court can conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Major League Baseball*, 542 F.3d at 311 (holding that expert testimony should be excluded when it is "speculative or conjectural").

Nor should speculative opinions by admitted by this Court. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (1996). A district court has discretion under Rule 703 "to determine

whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Silvestro*, 2009 U.S. Dist. LEXIS 134117, at *7, quoting *Shatkin v. McDonnell Douglas Corp*., 727 F.2d 202, 208 (2d Cir. 1994). An "opinion that is speculative or conjectural does not satisfy Rule 702 and should be excluded." *Jaquez*, 104 F. Supp. 3d at 427, citing *Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."); *Major League Baseball*, 542 F.3d at 311. "While the Daubert inquiry is 'flexible' and intended to give the Court the 'discretion needed to ensure that the courtroom door remains closed to junk science,' […] to warrant admissibility, 'it is critical that an expert's analysis be reliable at every step.'" *Jaquez*, 104 F. Supp. 3d at 427, quoting *Amorgianos* 303 F.3d at 267 (2d Cir. 2002).

Here, Dr. Guy's reports and anticipated testimony should not be admitted because it is not reliable. First, Dr. Guy's June 5, 2016 report regurgitates plaintiff's deposition testimony and a selected summary of his medical records. (*See* First Guy Report, Goykadosh Decl., Exhibit "B"). Indeed, the report focuses on plaintiff's subjective complaints to his medical providers and not any doctor's objective medical finding. Based on this "review," Dr. Guy "diagnoses" plaintiff with a list of disorders. (First Guy Report, Goykadosh Decl., Exhibit "B" at 3). In one single paragraph, Dr. Guy states that "it is [his] professional opinion that all of the […] injuries are consistent with being physically assaulted by more than one person and are not consistent with a "fall." (First Guy Report, Goykadosh Decl., Exhibit "B" at 3). This opinion is conclusory, conjectural, and connected to the existing data only by the *ipse dixit* of Dr. Guy. Indeed, Dr. Guy provides no basis to assess the reliability of his opinion. It is unclear, and unexplained, how vertigo and tinnitus can and would be caused by this incident. Besides for claiming that the "injury to the occipital region of the patient's head is consistent with being

struck by a hard object," Dr. Guy fails to how or why this sort of alleged injury could or would lead to vertigo or tinnitus. (First Guy Report, Goykadosh Decl., Exhibit "A" at 3). There is no methodology or analytic reasoning provided to explain this conclusion. In other words, pure *ipse dixit* and speculation.

As plaintiff was incarcerated, the First Guy Report relied solely on medical records and deposition testimony. For that reason, after plaintiff was released from state custody, an independent medical examination of plaintiff was conducted by Dr. Guy on September 28, 2017. (*See* Second Guy Report, Goykadosh Decl., Exhibit "C"). But the Second Guy Report merely repeats the same list of diagnoses. (Second Guy Report, Goykadosh Decl., Exhibit "C" at 2). While Dr. Guy purports to have conducted a physical examination of plaintiff, upon which his second report is based, again this description of this examination fails to provide any analytic reasoning or explanation of why and how Dr. Guy has reached his diagnosis. (Second Guy Report, Goykadosh Decl., Exhibit "C"). For instance, Dr. Guy fails to explain how the results of his examination lead him to believe as a physiatrist that plaintiff suffers from "reactive posttraumatic stress syndrome with reactive anxiety and depression;" "left hearing loss with tinnitus;" "multiple traumas with laceration to the occipital area and the left temporal area into the scalp with facial trauma, with vertigo, and tinnitus" or even "bilateral shoulder trauma." (Second Guy Report, Goykadosh Decl., Exhibit "C").

The problem is that Dr. Guy completely fails to explain the technical basis for his opinion and why the "investigative techniques" that he purportedly employed (i.e. a review of plaintiff's medical records and deposition transcription and a physical examination of plaintiff) lead to his conclusion that plaintiff suffers from the list of alleged ailments. There is absolutely no scientific evidence or medical reasoning cited to in either of Dr. Guy's expert reports. There is

no foundation for Dr. Guy's conclusions, no indication as to whether these conclusions are based on professional studies or personal experience. There is no "intellectual rigor" fueling or sufficient basis buttressing Dr. Guy's opinion. It does not satisfy Rule 702 and should not be admitted at trial.

## POINT III

## THE COURT SHOULD PRECLUDE GUY'S REPORT AND TESTIMONY BECAUSE IT IS NOT HELPFUL OR RELEVANT

As a final point, the Court should exclude Dr. Guy's testimony because it is not relevant or helpful to the jury. The Court must determine that the expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. This inquiry looks to whether the testimony is relevant. *In re Zyprexa*, 489 F. Supp. 2d at 283. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *Daubert*, 509 U.S. at 591-92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). This is the "primary issue." *In re Zxprexa*, 489 F.Supp. 2d at 282.

Expert testimony that is not helpful should not be admitted. A court should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001), quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). Furthermore, "expert testimony may not usurp the province of the judge to instruct on the law, or of the jury to make factual determinations." *Travelers Ind. Co.*, 2014 U.S. Dist. LEXIS 14981, at *11 (citations omitted).

Expert testimony that is not relevant should also not be admitted. Expert testimony must also adhere to the other Federal Rules of Evidence, including Rule 403, which provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The Rule 403 inquiry is particularly important in the context of expert testimony, "given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397. *See Daubert*, 509 U.S. at 595 ("'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" (quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

"Expert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations. Neither should it include conclusory testimony that 'undertakes to tell the jury what result to reach . . . [or] attempts to substitute the expert's judgment for the jury's." *In re Zyprexa*, 489 F. Supp. 2d at 283, quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

It is not appropriate for an expert to present a mere "narrative of the case which a juror is equally capable of constructing." *In re Rezulin* 551 (internal citation omitted); *accord Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005). Factual narratives by experts have been excluded on the grounds that they "supplant the role of counsel in making argument at trial or the role of the jury in interpreting the evidence." *In re Rezulin Prods.*, 309 F. Supp. 2d at 541 (citation omitted). "An expert who simply regurgitates what a party has told

him provides no assistance to the trier of fact through application of specialized knowledge." *Arista Records*, 608 F. Supp. 2d at 424-25. The Second Circuit has noted that "[a] district court may commit *manifest error* by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) (emphasis added).

Here, Dr. Guy's expert testimony should not be admitted as it merely reiterates plaintiff's deposition testimony and medical records and reiterates arguments that can reasonably be drawn by laypersons. The jury is equally capable of constructing the narrative that plaintiff appears to wish Dr. Guy will present: that the alleged use of force and alleged use of the asp on March 1, 2015 caused him "pain" and abrasions and a laceration. Plaintiff can, and will, testify about the incident. A jury can understand plaintiff's purported injures—i.e. "pain," "lacerations," and "abrasions"—without Dr. Guy's unnecessary assistance. To be clear, an expert is not need to explain how one might get a cut or bruise. This is well-within the province of the jury.[3] The purpose of Dr. Guy's testimony appears to be to amplify plaintiff's alleged ailments. But the problem with allowing this dual narration—one in an expert's authoritative voice—is that it will mislead the jury into believing plaintiff's alleged injuries should be afforded greater weight.

In sum, Dr. Guy's expert opinion serves only to bolster plaintiff's narrative. This presents cumulative evidence and needlessly wastes the jurors' time. *See* FED. R. EVID. 403. Moreover, that Dr. Guy "fails to add a layer of expertise or cogent analysis beyond that which a lay jury would so clearly understand reveals the problem." *Jaquez,* 104 F. 3d at 432. Allowing his testimony would be a manifest error as its only purpose is to "mirror" plaintiff's perceptions.

[3] And as explained *supra* at Points I and II, Dr. Guy is not qualified or reliable enough to explain the more complex alleged injuries that would require expert testimony, such as vertigo or tinnitus.

As the jury will be sufficiently capable of evaluating plaintiff's credibility in conjunction with admissible medical evidence, Dr. Guy offers no meaningful assistance and his report and testimony must be excluded under *Daubert* and its progeny.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their *Daubert* motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 20, 2018

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By: __________/s/_____________
Brachah Goykadosh
*Assistant Corporation Counsel*
Special Federal Litigation Division

cc: John Tumelty, Esq. (by email and by mail)
David Giaro, Esq. (by email and by mail)
Tumelty & Spier, LLP
*Attorneys for Plaintiff*
160 Broadway, Suite 708
New York, New York 10038