**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------X
ROBINSON BERMUDEZ,

                Plaintiff,

-against-

CITY OF NEW YORK, LIEUTENANT
MICHAEL EDMONDS, SERGEANT
JONATHAN PEYER, POLICE
OFFICER MATTHEW HYNES, POLICE
OFFICER CHRISTOPHER DISTEFANO
and POLICE OFFICER NICHOLAS
RUIZ.

                Defendants.

**MEMORANDUM & ORDER**
15-CV-3240 (KAM)(RLM)

----------------------------------X

**MATSUMOTO, United States District Judge**:

        Plaintiff Robinson Bermudez ("Bermudez" or "plaintiff") filed this action against the New York City Police Department's 102nd Precinct; Lieutenant Michael Edmonds; Sergeant Jonathan Peyer; and Police Officers Matthew Hynes and Christopher DiStefano on June 1, 2015, alleging excessive use of force in effecting his arrest on March 1, 2015.[1] (ECF No. 1, Compl.) Plaintiff amended his complaint substituting the City of New York for the 102nd Precinct and adding as an individual defendant Police Officer Nicholas Ruiz. (ECF No. 36, "Am. Compl.") By stipulation, plaintiff voluntary dismissed his claims against Peyer on May 12,

---

[1] Plaintiff initially brought this action *pro se* but retained counsel some time later. (*See* ECF No. 27, Notice of Appearance by John Tumelty on behalf of Robinson Bermudez.)

2017. (ECF Nos. 60 and 61, Stipulation of Voluntary Dismissal.) Then, defendants City of New York, Edmonds, and Hynes successfully moved for summary judgment, leaving Officers DiStefano and Ruiz as the remaining defendants ("defendants"). (*See* Docket Order dated March 30, 2018.) In anticipation of trial, the parties both filed a number of motions *in limine*, including a *Daubert* motion by defendants, and both parties submitted briefs outlining their outstanding objections to offered trial exhibits. (*See generally* ECF Nos. 99-116; 119-120; 122.) The court now rules on defendants' *Daubert* motion.

**DISCUSSION**

Defendants have moved to preclude the expert testimony of Dr. Ali Guy, M.D., plaintiff's retained physiatrist. (*See* ECF No. 115, Daubert Mot. at 1.) On plaintiff's behalf, Dr. Guy submitted two expert reports. The first, dated June 5, 2016, consisted of Dr. Guy's opinion on the cause of plaintiff's alleged injuries after he reviewed plaintiff's medical records and deposition testimony. (*See* ECF No. 113, Ex. B ("Guy Rept.").) The second, dated September 28, 2017, summarized Dr. Guy's subsequent physical examination of Bermudez and stated Dr. Guy's causation opinion, largely consistent with his first report. (*See* ECF No. 113, Ex. C ("Supp. Guy Rept.").) Due to plaintiff's incarceration, Dr. Guy did not physically examine Bermudez in preparing the first report. (Guy Rept. at 1.) Based on a review

of plaintiff's medical records and deposition testimony, Dr. Guy concluded in his first report that all of plaintiff's alleged injuries were causally related to the alleged trauma he sustained on March 1, 2015, and that plaintiff's injuries were consistent with being physically assaulted by more than one person and were not consistent with plaintiff having suffered a fall.  (*Id.* at 3.) Dr. Guy's opinion remained the same after completing a physical examination of plaintiff on September 28, 2017.  (Supp. Guy Rept. at 2 ("The patient remains still with permanent injuries as a result of the injury of March 1, 2015.  The patient remains temporarily totally disabled.").)

Defendants argue that the court should preclude Dr. Guy's testimony because it fails the standards articulated by the Supreme Court in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and is therefore inadmissible under Federal Rule of Evidence 702 ("Rule 702").  According to defendants, some of the injuries on which Dr. Guy would offer his opinion are outside the scope of a physiatrist's expertise, thus, Dr. Guy is not qualified to offer such opinions.  (Daubert Mot. at 4.)  Defendants next argue that even if Dr. Guy is qualified, his expert report and his opinions within should be precluded for a lack of reliability. (*Id.* at 7.)  Finally, defendants argue that the expert testimony Dr. Guy is actually qualified to offer would not be helpful to the

3

jurors or relevant because the inferences plaintiff seeks may properly be made by laypersons. (*Id*. at 11.)

Plaintiff responds that Dr. Guy's testimony should be admitted because: (1) physiatrists are qualified to treat a variety of injuries and disorders, (ECF No. 114, Opp. at 3); (2) Dr. Guy's methodology was sound, sufficient, and typical of experts in the field, (*Id.* at 6); and (3) Dr. Guy's opinion will be helpful to jurors because the alleged injuries are sufficiently complex, (*Id*. at 10). In the alternative, plaintiff requests that the court permit additional discovery so he may supplement his expert disclosures. (*Id*. at 12.)

## I. Federal Rule of Civil Procedure 26(a)(2)(B)

Before reaching the merits of defendants' *Daubert* challenge, the court will first address plaintiff's compliance with Federal Rule of Civil Procedure 26 ("Rule 26"). Federal Rule of Civil Procedure 26(a)(2)(B) requires retained expert witnesses to provide a report that discloses:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The Rule "guards against the presentation of sketchy and vague expert reports that provide little guidance to the opposing party as to an expert's testimony." *Conte v. Newsday, Inc.*, No. 06-CV-4859, 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011).

The Rule 26 expert disclosure requirement is designed to prevent a party from raising unexpected or new evidence at trial. *Id.* at *4; *Harkabi v. SanDisk Corp.*, No. 08-CV-8203, 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012) ("The purpose of the expert disclosure rules is to avoid surprise or trial by ambush." (internal quotation marks omitted)); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Pursuant to Federal Rule of Civil Procedure 37, the court may preclude expert reports "if they are insufficiently detailed and complete to satisfy Rule 26(a)(2)." *Conte*, 2011 WL 2671216, at *4; *see also Ebewo*, 309 F. Supp. 2d at 606-07.

Dr. Guy's report fails to meet the standards of Rule 26(a)(2). Plaintiff satisfies part of the Rule's requirements by disclosing Dr. Guy's *Curriculum Vitae*, (Daubert Mot. Ex. A ("Guy CV")), a list of cases in which he has previously testified, (Opp.

Ex. 1), and a statement of his anticipated compensation for testifying in this case, (*Id*.). Although Dr. Guy's first report details the "facts or data" that he considered in forming an opinion, namely plaintiff's deposition testimony and medical records, it fails to sufficiently disclose the "basis and reasons" for that opinion. Fed. R. Civ. P. 26(a)(2). Instead, after recounting plaintiff's recent medical history and complaints in summary fashion over two pages, Dr. Guy concludes that "all of the [plaintiff's] diagnoses are causally related to the trauma sustained on March 1, 2015. The [plaintiff's] injuries are consistent with being physically assaulted by more than one person, and are not consistent with a 'fall.'" (Guy Rept. at 3.) He further concludes that the injury to plaintiff's occipital region is "consistent with being struck by a hard object" like "the ASP (sic) described by [plaintiff]." (*Id*.) He also connects linear bruises from photographs of plaintiff's back with "being struck by a hard object" like the asp. (*Id*.) Dr. Guy does not elaborate on which of the several alleged injuries to the plaintiff's head he is referring. Dr. Guy's second report similarly describes the physical examination and plaintiff's complaints, and concludes that plaintiff "remains with permanent injuries as a result of the injury of March 1, 2015." (Supp. Guy Rept. at 2.)

Aside from connecting the use of an asp to plaintiff's bruises and trauma to his occipital region, neither report explains

6

how plaintiff's myriad diagnoses are causally linked to the alleged use of force by defendants and not to some other trauma or, in the case of hearing loss, plaintiff's age. While a reader of Dr. Guy's report might infer that some qualities of an asp caused the plaintiff's bruises and unspecified occipital region injuries, Dr. Guy does not explain why an asp in particular or the kicks and punches plaintiff alleges he endured would cause any of the persisting injuries plaintiff claims.

As such, the court finds that Dr. Guy's first and second reports do not contain "a complete statement of all opinions [he] will express and the *basis and reasons for them*" and thus the reports do not satisfy the requirements of Rule 26. Rule 26(a)(2)(B)(i) (emphasis added). The court therefore precludes the admissibility of both of Dr. Guy's reports, his testimony regarding the causation of plaintiff's alleged injuries, and his opinions regarding prognosis. *See, e.g.*, *Giladi v. Strauch*, No. 94-CV-3976, 2007 WL 415365, *7 (S.D.N.Y. Feb. 6, 2007) ("Preclusion is appropriate where an expert's report is so inadequate that it is impossible for [the other party] to ascertain . . . the specifics to which [the expert] will testify or any of the bases from which [he or she] derived their conclusions." (citation and internal quotation marks omitted)). As discussed *infra*, Dr. Guy's lack of explanation compels the court to further conclude that Dr. Guy's underlying causation and prognosis opinions are unreliable

7

and thus inadmissible pursuant to Rule 702. *See Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But . . . a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

## II. Federal Rule of Evidence 702 and *Daubert*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. Whereas Rule 26(a) guards against the presentation of expert reports that provide little guidance to the opposing party as to an expert's testimony, Rule 702 guards against the presentation of insufficiently reliable evidence to the finder of fact. *Conte*, 2011 WL 2671216, at *4. Rule 702 permits expert testimony where:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under the *Daubert* framework, the district court serves as the "gatekeeper" to ensure that, in accordance with Rule 702, the "expert's testimony both rests on a reliable foundation and is

8

relevant to the task at hand." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert*, 509 U.S. at 597). "The district court has broad discretion to carry out this gatekeeping function." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016). The district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The proponent of the expert testimony has the burden of establishing the admissibility of the evidence under the *Daubert* framework. *In re Pfizer*, 819 F.3d at 658.

Before admitting expert testimony under Rule 702 and *Daubert*, the district court should make the following determinations: (a) "whether the witness is qualified to be an expert;" (b) "whether the opinion is based upon reliable data and methodology;" and (c) "whether the expert's testimony on a particular issue will assist the trier of fact." *Marini v. Adamo*, 995 F. Supp. 2d 155, 179 (E.D.N.Y. 2014) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)).

## III. Admissibility of Dr. Guy's Testimony

Defendants attack Dr. Guy's anticipated testimony on three grounds: (a) Dr. Guy does not possess the relevant knowledge and experience such that he is qualified to proffer expert

9

testimony on the nature and cause of plaintiff's alleged injuries; (b) Dr. Guy's opinion is conclusory and thus unreliable; and (c) Dr. Guy's testimony will not assist the trier of fact.

### A. Qualifications

Defendants' argue that Dr. Guy is not qualified to testify regarding plaintiff's many alleged injuries because Dr. Guy is a physiatrist and not an orthopedist or neurologist. (Daubert Mot. at 4-5.) Physiatrists, defendants argue, are "a far cry" from experts in orthopedics, neurology, or otolaryngologic medicine. (*Id.* at 6.)

The court may admit expert testimony if the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The court considers the "totality of a witness's background when evaluating the witness's qualifications to testify as an expert." *Rosco, Inc. v. Mirror Lite Co.*, 506 F. Supp. 2d 137, 144-45 (E.D.N.Y. 2007). Expert testimony must be limited to the "issues or subject matters that are within [the witness's] area of expertise." *Marini*, 995 F. Supp. 2d at 180 (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997)).

The court agrees with defendants that Dr. Guy's education, training, and experience do not qualify him to render an opinion on many of plaintiff's alleged injuries. Dr. Guy is a physiatrist. (Opp. at ¶ 3.) Under a section headed "Medical

Licenses and Certifications," his *Curriculum Vitae* lists "Diplomate of the American Board of Physical Medicine and Rehabilitation." (Guy CV at 1.) The American Board of Physical Medicine and Rehabilitation's ("ABPMR," or the "Board") website states that physiatrists are "doctor[s] with training in treating disorders or disability of the muscles, bones, and nervous system." *ABPMR – About Us*, https://www.abpmr.org/About (last visited December 21, 2018). The Board's website also lists certain conditions that may be treated by a physiatrist, including "back/neck pain," "brain injury/concussion," "arthritis," "chronic pain," "sports injury," "complex wounds," "spinal cord injury," and "muscle/nerve disorders," among others. *Id*.

Dr. Guy's report causally links plaintiff's following injuries to the alleged use of force by defendants: vertigo; tinnitus; post-concussion syndrome with reactive post-traumatic stress syndrome, anxiety, and depression; left hearing loss with tinnitus; post-traumatic headaches; shoulder trauma; and lacerations and abrasions.[2] Plaintiff has not explained why Dr. Guy's qualifications as a physiatrist permit him to opine on plaintiff's alleged hearing loss and tinnitus, vertigo, post-

---

[2] Dr. Guy's list of diagnoses also includes "4. Rule out cervical and/or lumbar disc bulge versus herniation. 5. Rule out cervical and/or lumbar radiculopathy 6. . . . [R]ule out rotator cuff tears. 7. Rule out right hand carpal tunnel syndrome." (Guy Rept. at 3.) It is unclear if this notation indicates that the diagnosis has been ruled out, may be ruled out, or something else entirely.

traumatic stress syndrome, anxiety, and depression. Instead, plaintiff only argues that Dr. Guy has 35 years of experience as a physician, "has treated numerous injuries" and "patients involving all sorts of accidents." (Opp. at ¶ 12.) Plaintiff further argues that Dr. Guy's experience treating "various injuries and knowledge of anatomy and physiology within the context of the effects on the human body" serves as sufficient qualification to opine on plaintiff's injuries. (*Id.* at ¶ 13.) Plaintiff does not explain what various injuries and accidents Dr. Guy has previously treated or what other specialized training he has completed that qualify him to render an expert opinion on all of plaintiff's many and varied injuries alleged in this case. As such, the court finds Dr. Guy unqualified to make conclusions as to certain of plaintiff's injuries, specifically vertigo, depression, anxiety, post-traumatic stress syndrome, and hearing loss or tinnitus. Although ABPMR's website is far from a conclusive or exhaustive representation of any individual physiatrist's qualifications, plaintiff has not made an adequate or specific showing of why Dr. Guy is qualified to opine on plaintiff's alleged injuries.

The court finds further support for its determination regarding Dr. Guy's lack of qualifications in Dr. Guy's second report, in which he concludes that plaintiff "will also need referral to a psychiatrist for reactive anxiety and depression[,]

12

. . . an ear, nose and throat specialist to evaluate [his] hearing loss[,] and will also need to see a neurologist." (Supp. Guy Rept. at 2.) As a generally trained physician, Dr. Guy likely recognizes conditions that require the expertise and training of *other medical specialists* to properly diagnose and treat a patient, and has apparently done so here with respect to plaintiff. Dr. Guy's suggestion to refer treatment of plaintiff's alleged injuries weighs heavily against finding him qualified to determine their cause and prognosis. As such, the court finds Dr. Guy unqualified to offer opinions as to these injuries, their alleged causes, and prognoses. Though Dr. Guy may have the necessary qualifications and experience to offer expert testimony as to some of plaintiff's remaining injuries, for reasons discussed *infra*, the court finds Dr. Guy's causation opinion unreliable and thus inadmissible.

**B. Reliability**

Defendants next dispute that Dr. Guy's opinion is sufficiently reliable under *Daubert*. They argue that Dr. Guy's opinion is conclusory and unsupported. (Daubert Mot. at 9.) Plaintiff responds that Dr. Guy conformed to the methods of other experts in the field because he based his opinion on his experience and education, and a review of peer-reviewed articles, textbooks, journals, and reliable data. (Opp. at ¶ 21.) Additionally, plaintiff takes issue with the defendants' election not to depose Dr. Guy. (*Id.* at ¶ 22.) Had defendants done so, plaintiff argues,

13

it would have been clear that Dr. Guy's offered testimony is reliable, admissible, and relevant.

In assessing reliability, the court considers the indicia of reliability identified in Rule 702: "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Williams*, 506 F.3d at 160 (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). The *Daubert* inquiry is flexible, and there is no "definitive checklist or test" for the court to follow. *Daubert*, 509 U.S. at 593; *Kumho Tire Co.*, 526 U.S. at 151 ("The *Daubert* factors do *not* constitute a definitive checklist or test." (emphasis in original)).

The court "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached," *Amorgianos*, 303 F.3d at 266, but must also be certain "that there [is] a sufficiently reliable connection between the methodology and the expert's conclusions for such conclusions to be admissible," *Marini*, 995 F. Supp. 2d at 180 (citing *Gen. Elec. Co.*, 552 U.S. at 146).

Expert opinions that are "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached" must be excluded as unreliable opinion testimony under

14

*Daubert* and Rule 702. *Amorgianos*, 303 F.3d at 266. As part of their gatekeeping function, courts must exclude expert testimony that is "speculative or conjectural." *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 427 (S.D.N.Y. 2015); *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). Conclusory opinions are a form of *ipse dixit*, and often provide an insufficient basis upon which to assess reliability. *Jaquez*, 104 F. Supp. 3d at 426 (citing *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005); *see also Gen. Elec. Co.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Vale v. United States of America*, 673 F. App'x 114, 117 (2d Cir. 2016) ("His testimony also lacked reliable foundation because he provided no explanation as to how his opinion was based on his experience or medical education.").

The court finds Dr. Guy's opinion contained in both reports unreliable. Although plaintiff and Dr. Guy identify the materials that Dr. Guy reviewed in preparing his initial report, neither adequately explain how Dr. Guy reached his offered conclusions. Dr. Guy's opinion is conclusory. His report skips from plaintiff's recent medical history related to the incident and his then-current diagnoses to Dr. Guy's positive causation opinion. Dr. Guy does not explain the bases of his conclusions,

15

nor the assumptions or foundations upon which his conclusions lie. Although the supplemental report describes Dr. Guy's physical examination and some new complaints by plaintiff, Dr. Guy's opinion remains largely the same and, key here, still conclusory: "patient remains still with permanent injuries as a result of the injury of March 1, 2015." (Supp. Guy Rept. at 2.) Moreover, and as discussed above, Dr. Guy does not explain in either report why he ruled out a fall, some other trauma, age-related hearing loss in the case of plaintiff's hearing issues, or some other cause in the case of plaintiff's depression and anxiety. As such, the court cannot adequately ascertain whether Dr. Guy applied reliable principles and methods or determine whether Dr. Guy applied them properly to the facts of this case. *See Williams*, 506 F.3d at 160. Thus, the plaintiff has failed to satisfy his burden under Rule 702 and the court must exclude Dr. Guy's opinion as unreliable.

Though the apparent "analytical gap" in Dr. Guy's opinion is sufficient to exclude it, there are other aspects of Dr. Guy's reports that undercut a finding of reliability. *Gen. Elec. Co.*, 522 U.S. at 146. First, and as discussed above, the court has already concluded that Dr. Guy is not qualified to opine on at least some of plaintiff's alleged injuries, indeed the more serious and persistent ones. *See Jaquez*, 104 F. Supp. 3d at 429 ("[M]ere possession of a medical degree does not qualify one to be an expert in all medically related fields.") The court finds Dr.

16

Guy's willingness to opine on these injuries troubling. This type of overreach—drawing conclusions in a federal litigation without authority or necessary expertise—calls into question Dr. Guy's judgment, and ultimately the reliability of the opinions he might otherwise be qualified to make.

Second, Dr. Guy's initial report includes a number of apparent errors as to the dates of plaintiff's relevant treatment. Although the court is not inclined to penalize litigants for occasional typographical errors, Dr. Guy's report appears to confuse the years of some of plaintiff's relevant medical treatments and complaints. For instance, the first report is dated June 5, 2016 but describes events that happened after that date, for example: complaints of back pain, September 29, 2016; complaints of vertigo and lower back pain, November 18, 2016; restricted from sports activity, February 10, 2017; denied Percocet, September 19, 2016; consulted with an ear, nose, and throat specialist, April 22, 2017. (Guy Rept. at 2.) At the very least, these errors make the reader guess as to what the actual dates are and further call into question the care employed in creating the report, and its reliability as a whole.

Finally, Dr. Guy's opinion is undercut by the length of time that elapsed between the alleged use of force and Dr. Guy's physical examination of plaintiff, as recounted in his second report. Dr. Guy examined plaintiff on September 28, 2017—more

than 30 months after the incidents giving rise to this case. Plaintiff's significant injuries may be so enduring that this lengthy period is not relevant, but Dr. Guy's report and plaintiff's opposition papers offer no support for such an argument. For the foregoing reasons, the court finds Dr. Guy's opinion unreliable and thus inadmissible under Rule 702. He may not offer testimony regarding the contents of his first report or his underlying opinion and, as discussed above, plaintiff is precluded from admitting either expert report.

Dr. Guy may, however, offer testimony regarding the contents of his second report consistent with the following. Although Dr. Guy may not testify as a qualified expert under Rule 702, the court finds that he may testify as a fact witness akin to plaintiff's treating physician. *See* Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."); *see also Pierce v. City of New York*, No. 16-CV-5703, 2017 WL 2623857, at *3 (E.D.N.Y. June 16, 2017). As such, Dr. Guy may testify as to his personal observations and findings on his examination of plaintiff on September 28, 2017, the conduct of that examination, plaintiff's condition on that day, and a treatment plan he would recommend. (*See,* e.g., Supp. Guy Rept. at 1-2, sections titled "Physical Examination" and "Plan.")

### C. Assistance to the Trier of Fact

The court need not reach defendants' argument that Dr. Guy's testimony would not assist the jury in understanding plaintiff's alleged injuries as the court has already concluded that Dr. Guy may not offer his opinion.

## IV. Reopening Discovery

Plaintiff requests the court to permit him to supplement his expert reports in the event, as here, the court finds Dr. Guy's report insufficient. Plaintiff has not demonstrated good cause as to why he should be permitted a second chance to fulfill his obligations under Rule 26. Moreover, given that the parties are on the eve of trial, the court declines to reopen discovery even for this limited purpose as it would prejudice defendants and certainly delay trial in this case that was filed on June 1, 2015. Finally, supplementing the expert report will not cure fundamental issues with Dr. Guy's lack of required qualifications or the reliability of his opinions.

## CONCLUSION

For the reasons set forth above, the court hereby precludes the use of Dr. Guy's expert reports under Rule 26 and excludes any testimony regarding causation and prognosis offered by Dr. Guy under Federal Rule of Evidence 702, but will permit

Dr. Guy to testify as a fact witness limited to his personal observations of plaintiff during his examination on September 28, 2017.

**SO ORDERED.**

Dated: December 21, 2018
Brooklyn, New York

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge