**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------X

ROBINSON BERMUDEZ

        Plaintiff,

  -against-

CITY OF NEW YORK, LIEUTENANT
MICHAEL EDMONDS, SERGEANT JONATHAN
PEYER, POLICE OFFICER MATTHEW
HYNES, POLICE OFFICER CHRISTOPHER
DISTEFANO, AND POLICE OFFICER
NICHOLAS RUIZ,

        Defendants.

--------------------------------X

<u>**MEMORANDUM AND ORDER**</u>
15-CV-3240 (KAM)(RLM)

**MATSUMOTO, United States District Judge:**

      Plaintiff Robinson Bermudez ("plaintiff" or
"Bermudez") brings this action under 42 U.S.C. § 1983, alleging
defendant police officers used excessive force to arrest him on
March 1, 2015. (*See* ECF No. 36, Amended Complaint ("Am.
Compl.").) Trial in this matter is scheduled to begin on
January 14, 2019. The court assumes the parties' familiarity
with the underlying facts of the instant case. (*See* ECF No. 89,
Report and Recommendation at 2-5.)

      Pending before the court are the parties' respective
motions *in limine* to preclude certain evidence from being
admitted at trial. (*See* ECF No. 101, Defendants' Memorandum in
Support of Motion *in Limine* ("Def. Mem."); ECF No. 102,
Plaintiff's Opposition ("Pl. Opp."); ECF No. 107, Plaintiff's

Memorandum in Support of Motion *in Limine* ("Pl. Mem."); ECF No. 109, Defendants' Opposition ("Def. Opp."); ECF No. 119, Defendants' Outstanding Objections to Trial Exhibits ("Def. Obj."); ECF No. 120, Plaintiff's Outstanding Objections to Trial Exhibits ("Pl. Obj.").) Defendants have already successfully moved the court to preclude expert testimony from one of plaintiff's witnesses and to preclude the use of that witness's expert report. (*See* ECF No. 137, *Daubert* Order; ECF No. 112, Defendants' *Daubert* Motion ("*Daubert* Mot.").) For the reasons set forth below, the motions are granted in part and denied part. The court also rules on the parties' respective objections below but reserves decision as to some of the objections pending an offer of proof by the proponent at the scheduled Final Pretrial Conference in this matter. Consistent with this order, the parties shall confer regarding their remaining evidentiary disputes and be prepared to offer proof as to exhibits not precluded by this order at the Final Pretrial Conference.

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d

136, 141 (2d Cir. 1996). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984).

The admissibility of evidence at trial is governed by the Federal Rules of Evidence. Federal Rule of Evidence 402 ("Rule 402") provides that all relevant evidence is admissible except as otherwise provided by the Constitution, Act of Congress, or applicable rule. Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized the relevance threshold as "very low." *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). To be relevant, evidence need not prove a fact in issue by itself, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985)).

<u>Relevance in Excessive Force Cases</u>

Relevant evidence in an excessive force case concerns "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation mark omitted). According to the Supreme Court, the relevant factors for a jury to consider in determining whether police force was excessive include: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the defendants; (3) and whether the plaintiff actively resisted arrest or attempted to evade arrest by flight. *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This determination requires the jury to look to the totality of the circumstances. *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015).

"The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable officer on the scene . . . at the moment' the force is used." *Rogoz*, 796 F.3d at 246-47 (quoting *Graham*, 490 U.S. at 396). It follows

then that facts learned by an officer after an "arrest cannot be used to justify the amount of force used to accomplish that arrest." *Lewis v. City of Albany Police Dep't*, 332 F. App'x 641, 643 (2d Cir. 2009) (affirming preclusion of evidence learned by arresting officers subsequent to use of force).

### Rule 403 Probative-Prejudice Balancing

In addition to the relevance of the evidence that the parties seek to offer or exclude in their motions, several other Federal Rules of Evidence (the "Rules") bear on the court's determination of admissibility. Evidence that is otherwise admissible under the Rules is generally subject to the probative-prejudice balancing analysis provided in Federal Rule of Evidence 403. Rule 403 permits the exclusion of relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. District courts wield broad discretion in making decisions under this probative-prejudice balancing test. *See Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327-28 (2d Cir. 1986); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.") "In making a Rule 403 determination, courts

should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.'" *Bensen v. Am. Ultramar Ltd.*, No. 92-CV-4420, 1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)).  The court applies the foregoing analysis to the parties' pending motions and objections.

**DISCUSSION**

        In the instant motions, defendants move to preclude: (i) plaintiff from arguing that his arrest was lawful and that he was not resisting arrest, and from arguing or mentioning claims against dismissed defendants; (ii) evidence relating to indemnification of the defendant officers by New York City, including references to defense counsel as "City Attorneys"; (iii) admission of the New York Police Department's ("NYPD") Patrol Guide; (iv) evidence of an investigation conducted by the Civilian Complaint Review Board ("CCRB") into the incident giving rise to plaintiff's claims, specifically documents related to defendant Officer Ruiz's alleged use of an extendable baton or asp on plaintiff; (v) evidence of disciplinary histories of, and complaints and prior lawsuits against, defendant officers; (vi) testimony by plaintiff regarding causation of his alleged injuries; (vii) evidence regarding

injuries Officer LaSala sustained in effecting plaintiff's arrest; (viii) plaintiff from arguing that defendants had alternative means to effect his arrest; (ix) argument regarding other instances of alleged police misconduct; and (x) suggestions by plaintiff to the jury for a specific dollar amount to be awarded as damages. (*See* Def. Mem. at ii-iii.) Additionally, defendants object to admission of: (a) files from both the CCRB investigation and Internal Affairs Bureau ("IAB") investigation into the March 1, 2015 incident; (b) defendants' disciplinary histories and performance evaluations; (c) plaintiff's medical records from Greene Correctional Facility and Medialliance Medical Health Services; (d) evidence of plaintiff's medical examination related to his application for a Commercial Driver License ("CDL"); and (e) the expert report of Dr. Ali Guy, M.D. (Def. Obj. at ii.). Plaintiff did not oppose defendants' outstanding objections to trial exhibits. (*See* ECF No. 123, Plaintiff's October 23, 2018 Letter.)

Plaintiff moves to preclude defendants from introducing: (i) certain documents stemming from his arrest, prosecution, and conviction for the March 1, 2015 incident; (ii) certain evidence of his prior conduct; (iii) investigative documents prepared by officers involved with plaintiff's arrest; (iv) evidence concerning plaintiff's employment history; (v) expert testimony from defendants' witness regarding plaintiff's

alleged hearing loss; (vi) testimony by Captain Edmonds and Sergeant Hynes as irrelevant;[1] (vii) testimony by Officer Michaud as untimely disclosed; (viii) pleadings and other discovery responses filed by plaintiff; (ix) evidence of attorney remarks made during depositions, along with evidence of the parties' *in limine* motion practice; and (x) testimony by certain officers regarding the existence of probable cause. (*See* Pl. Mem.) Additionally, plaintiff seeks to affirmatively admit the NYPD Patrol Guide and certain photographs, including his booking photograph. (*See id.*) Plaintiff objects to the admission of a considerable portion of defendants' exhibits under Federal Rules of Evidence 401, 402, and 403, (*See* Pl. Obj. 2-5), and to documentary evidence from plaintiff's criminal trial under Rules 608 and 609, (*See id.* at 5-6). Plaintiff also objects to a number of defendants' offered exhibits on hearsay grounds. (*See id.* at 6.) Finally, plaintiff objects to admission of several exhibits as untimely disclosed. (*Id.* at 7.) Defendants opposed plaintiff's objections to the defense exhibits. (ECF No. 122, Defendants' Response to Outstanding Objections ("Def. Resp.").)

The parties have apparently reached agreements and stipulations regarding some of their motions and objections. Plaintiff has agreed not to refer to defense counsel as "City

---

[1] Defendants' submissions for the instant motions refer to Sergeant Hynes, though plaintiff's Complaint and Amended Complaint were apparently brought when Hynes held the rank of Police Officer.

Attorneys" or to mention that defendants may be indemnified by the City of New York. (*See* ECF No. 117, Proposed Joint Pretrial Order ("JPTO") at 4.) The court now addresses the parties' remaining motions and outstanding objections in turn.

## I.    **Defendants' Motions *in Limine***

### A. **Failed Theories of Liability and Collateral Estoppel**

Defendants move to preclude plaintiff from arguing that his arrest was unlawful. (Def. Mem. at 3-4.) Defendants contend that any argument by plaintiff regarding the lawfulness of his arrest may invite the jury to determine an issue already decided against plaintiff. (*Id.* at 4.) Additionally, defendants seek to preclude plaintiff from introducing evidence about claims brought in this matter that have been dismissed, and damages arising from such claims. (*Id.*) Defendants further argue that the doctrine of collateral estoppel bars plaintiff from arguing that he was not resisting arrest. (*Id.*) Plaintiff did not oppose defendants' motion. (*See* ECF No. 104, Defendants' Reply ("Def. Reply") at 1.)

The court grants defendants' motion to preclude evidence or argument that plaintiff's arrest was unlawful. Further, plaintiff may not raise or mention dismissed claims brought against former defendants, or officers not before this court, or reference damages arising from claims that are not part of the trial. Such dismissed claims are not probative of

the ultimate issue before the jury: the reasonableness of the alleged use of force by defendants. *Cf. Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011) ("[Plaintiff] cannot predicate claims against named defendants based on the acts of unnamed defendants since there is no basis for vicarious or shared liability between them."). Further, even if such evidence was probative, admission risks prejudice and confusion, to the extent that the jury may find defendants liable for the conduct of other officers. Nothing in this decision impacts plaintiff's ability to offer evidence regarding the role of non-party officers in the March 1, 2015 incident to the extent it bears on defendants' conduct.

The court next turns to defendants' motion under the collateral estoppel doctrine to preclude plaintiff from arguing that he was not resisting arrest. Before a court may apply collateral estoppel, four requirements must be met: (1) the issues of both proceedings must be identical; (2) the relevant issues were actually litigated and decided in the prior proceeding; (3) there must have been a full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits in the prior proceeding. *Cent. Hudson Gas & Elec. Co. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

"[W]hile a plaintiff may be estopped in a civil case from relitigating issues previously determined in a criminal case, 'such estoppel extends only to questions "distinctly put in issue and directly determined" in the criminal prosecution.'" *Hemphill v. Schott*, 141 F.3d 412, 416 (quoting *Emich Motors v. Gen. Motors*, 340 U.S. 558, 568-69 (1951)). "Collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted, and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." *Brown v. N.Y. State Supreme Court for Second Judicial Dist.*, 680 F. Supp. 2d 424, 428 (E.D.N.Y. 2010) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).

The court finds that plaintiff is estopped from asserting or presenting that evidence he was not resisting arrest on March 1, 2015, because of his conviction at his criminal trial for that offense. *See Bernazard v. Koch*, No. 15-CV-642, 2018 U.S. Dist. LEXIS 38575, at *9 (E.D.N.Y. Mar. 8, 2018). Plaintiff's conduct at issue in both the criminal trial and this proceeding is identical, and was found beyond a reasonable doubt by the criminal trial jury to constitute resisting arrest. (*See* ECF No. 100-1, Def. Mem. Ex. A, Certificate of Disposition.) Such conduct was actually litigated and decided in the prior proceeding when the jury

returned a guilty verdict as to the resisting arrest count and
plaintiff had a full and fair opportunity to litigate that issue
in his criminal trial. *Cent. Hudson Gas & Elec. Co.*, 56 F.3d at
368. Finally, the question of whether plaintiff intentionally
prevented an officer from effecting his authorized arrest was
necessary to support a valid and final judgment on the merits.
*Id.*

Although, "[t]he fact that a person whom a police
officer attempts to arrest resists . . . no doubt justifies the
officer's use of some degree of force, . . . it does not give
the officer license to use force without limit." *Sullivan*, 225
F.3d at 165-66. Here, the *degree* to which plaintiff resisted
arrest remains a fact issue for the jury to consider as it
determines the reasonableness of defendants' responsive use of
force. *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir.
2015) ("Even resistance sufficient to result in conviction for
resisting arrest does not preclude a finding of 'excessive force
in effectuating the arrest.'" (quoting *Sullivan*, 225 F.3d at
166)).

Notwithstanding plaintiff's failure to oppose
defendants' collateral estoppel argument, defendants have not
established that the jury in plaintiff's criminal trial made
findings regarding the degree with which he resisted arrest.
*Hemphill*, 141 F.3d at 416 ("[W]e accept only those facts the

jury necessarily determined in returning [plaintiff's] conviction."); *Sullivan*, 225 F.3d at 167 ("[N]one of the records from the prior criminal proceeding . . . were before the district court. Thus . . . it is unclear which of [plaintiff's] acts formed the basis for his convictions."). Thus, the court finds that plaintiff may not argue that he was not resisting arrest, but that he may offer evidence that describes his behavior during his arrest. If he testifies that he offered no resistance, his conviction for resisting arrest is likely to be admitted.

Finally, defendants' request for an instruction that plaintiff's arrest was lawful is denied without prejudice to renew at the time of the charging conference.

### B. NYPD Patrol Guide

Defendants next move to preclude plaintiff from referring to or introducing any portion of the NYPD Patrol Guide. (Def. Mem. at 12-14.) Defendants argue that the guide is not relevant as it does not set forth the constitutional standards against which defendants' conduct is to be judged and that any reference to a violation of the guide would confuse the jury. (*Id*.) Plaintiff responds that the guide is relevant under Second Circuit precedent and that excerpts of the patrol guide are admissible as impeachment evidence. Plaintiff

similarly moves for the court to affirmatively admit the patrol
guide through his motion *in limine*.  (Pl. Mem. at 14.)

Defendants are correct that a violation of the NYPD
Patrol Guide does not, in and of itself, constitute unreasonable
conduct in an excessive force case.  However, several courts in
this Circuit have permitted parties to introduce Patrol Guide
excerpts as relevant and helpful to determining the
reasonableness of an officer's conduct.  *See Gogol v. City of
New York*, No. 15-CV-5703, 2018 WL 4616047, at *4 (S.D.N.Y. Sept.
26, 2018) (admitting Patrol Guide excerpts, subject to further
relevancy determinations, as relevant to question of
reasonableness); *Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL
3561708, at *14, (E.D.N.Y. June 27, 2016) (permitting parties to
introduce relevant excerpts of Patrol Guide and holding that
"testimony regarding sound professional standards governing a
defendant's actions can be relevant and helpful" (internal
quotation mark omitted)); *Tardiff v. City of New York*, No. 13-
CV-4056, 2017 U.S. Dist. LEXIS 135607, at *18-19, (S.D.N.Y. Aug.
23, 2017) ("Whether the officers violated the NYPD Patrol Guide
remains a significant factor to be considered in ultimately
determining whether the officers' actions that day were
reasonable and subject to qualified immunity."); *but see Abeyta
v. City of New York*, 588 F. App'x 24, 24 (2d Cir. 2014)

(affirming district court's decision to preclude excerpts of NYPD Patrol Guide under Rule 403).

Defendants' motion to preclude introduction of the Patrol Guide is denied. Plaintiff may introduce certain excerpts of the Patrol Guide, subject to the court's further assessment of relevance under Rule 402 and any Rule 403 issues. Plaintiff shall identify the excerpts he intends to use as affirmative evidence during the Final Pretrial Conference scheduled in this matter.

Finally, the court finds the Patrol Guide is not admissible under Federal Rules of Evidence 608 and 609 for impeachment purposes. However, should a witness testify on direct as to some fact regarding the Patrol Guide, the court may consider whether specific excerpts of the Patrol Guide may be admitted. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) ("Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case."). Only in the foregoing circumstance may plaintiff offer the guide as impeachment evidence.

**C. CCRB Investigation**

Defendants move to preclude plaintiff from introducing evidence of a CCRB investigation into defendant Officer Ruiz's use of the asp as irrelevant and prejudicial. (Def. Mem. at 14.) In support, defendants argue that under Federal Rule of Evidence 402 the CCRB determination has no tendency to prove a fact of consequence in determining the action. (*Id.*) Plaintiff responds that evidence stemming from CCRB investigations is admissible under Rule 404(b) to establish a pattern of similar conduct. (Pl. Opp. at 6.) Additionally, plaintiff argues that the CCRB's conclusions are admissible as impeachment evidence, (*id.* at 7), and as exceptions to the hearsay definition either as public records under Rule 803(8), (*id.*), or as party admissions under Rule 801(d)(2), (*id.* at 9). Plaintiff indicates that he intends to use testimony of other police officers made during the CCRB investigation to rebut defendants' position that they had probable cause to arrest plaintiff. (*Id.*)

First, plaintiff may not relitigate probable cause which is not determinative of the excessive force issue in this case; moreover, probable cause has been conclusively determined by the jury that convicted plaintiff for the underlying offense. *See Almonte v. City of New York*, No. 15-CV-6843, 2018 U.S. Dist. LEXIS 141803, at *7 (S.D.N.Y. Aug. 21, 2018). Thus, argument or testimony by plaintiff as to a lack of probable cause for his

arrest is precluded.  Furthermore, the conclusions reached by the CCRB are not relevant to the ultimate issue in this Section 1983 litigation, whether defendants violated plaintiff's rights under the Constitution.  As such, defendants' motion to preclude the CCRB investigation files and the CCRB's conclusions is granted.

The court next addresses plaintiff's argument that the CCRB investigation is admissible under Rule 404(b).  Evidence of wrongful acts is inadmissible to prove a person's propensity to commit the act at issue.  Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  However, under the Second Circuit "inclusionary rule," evidence of prior crimes, wrongs, or acts is admissible "for any purpose other than to show a[n individual's] . . . propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403."  *Carboni*, 204 F.3d at 44 (quoting *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994)).  The Second Circuit has held that unsubstantiated complaints are not sufficiently probative to outweigh the potential for unfair prejudice under Rule 403.  *See Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192, 197 (D. Conn. 2009)

(citing *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991));
*see also Jean-Laurent v. Wilkinson*, No. 05-CV-0583, 2009 WL
666832, at *3 (S.D.N.Y. Mar. 13, 2009) (permitting introduction
of defendants' substantiated complaints less than ten years
old).

District courts have considerable discretion in
deciding whether to admit evidence related to prior acts.
*Carboni*, 204 F.3d at 44; *see also Ismail v. Cohen*, 899 F.2d 183,
188 (2d Cir. 1990). Courts admit extrinsic acts as evidence of
a pattern or practice under Rule 404(b) when those acts share
"unusual characteristics" with the acts alleged or represent a
"unique scheme." *Phillips v. City of New York*, 871 F. Supp. 2d
200, 203 (E.D.N.Y. 2012) (quoting *Berkovich*, 922 F.2d at 1022).
More than the "mere repeated commission" of some act, the
proffering party must demonstrate that "[t]he device used [is]
so unusual and distinctive as to be like a signature." *Wallace
v. Hano*, No. 90-CV-2064, 1992 U.S. Dist. LEXIS 13388, at *19,
(S.D.N.Y. Sept. 3, 1992) (internal quotation mark omitted)
(quoting *Benedetto*, 571 F.2d at 1249).

Although other acts not admissible under Rule 404(b)
may nevertheless be admissible under Federal Rule of Evidence
608 as impeachment evidence bearing on a witness's truthfulness,
Rule 608 prohibits the use of *extrinsic* evidence for such
purposes. Fed. R. Evid. 608. And, as a general matter,

"[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-CV-3762, 2017 WL 713897, at *2 (E.D.N.Y Feb. 23, 2017); *see also United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) ("[T]he CCRB report indicates that the underlying conduct involved no dishonesty. Therefore, the report could not have been probative of [the subject officer's] truthfulness or untruthfulness.").

Plaintiff has failed to establish a pattern of relevant conduct and merely offers blanket assertions that evidence stemming from the CCRB investigation would do so. The court is left with plaintiff's expressed intent to proffer evidence and an insufficient evidentiary basis for admission under Rule 404(b). Given plaintiff's insufficient proffer, the court will grant defendants' motion to preclude the CCRB materials.

Furthermore, plaintiff's argument that evidence related to the CCRB investigation may be used for impeachment evidence fails to fully account for Rule 608. Plaintiff may not use extrinsic evidence of prior conduct to attack a witness officer's character for truthfulness. However, Rule 608 permits the inquiry into such prior acts on cross-examination. Plaintiff may do so at trial, if he can establish relevance

under Rule 402, satisfy Rule 403's balancing test, demonstrate that the CCRB evidence relates to the witness's truthfulness or lack thereof, establish a pattern of conduct, and satisfy a hearsay exception.

Finally, though plaintiff may not use extrinsic evidence stemming from the CCRB investigation to prove an officer witness's character for truthfulness, on cross-examination, he may use prior sworn statements of the trial witness from the CCRB investigation to impeach under Rule 613 if it is a prior inconsistent statement.

### D. Defendants' Disciplinary History and Prior Lawsuits

Defendants also move under Rule 404(b) to preclude plaintiff from inquiring about defendants' disciplinary histories and any other civil rights actions brought against defendants. (Def. Mem. at 17.) Plaintiff responds first that the disciplinary and litigation history of a witness is admissible as bearing on credibility and that, under Rule 404(b), such evidence is admissible where it concerns "wrongful arrest, fabrication of evidence, perjury, and/or excessive force used as a vehicle to attempt to justify an arrest." (Pl. Opp. at 10.) Further, plaintiff argues that defendants' disciplinary histories establish a pattern of conduct by defendants and a motive for similar conduct. (*Id.* at 12.) Finally, plaintiff

argues that the evidence is also admissible as impeachment material. (*Id.*)

As with the CCRB investigation, defendants' disciplinary histories constitute prior act evidence under Rule 404(b) and are inadmissible unless offered for some other relevant purpose besides proving conformity with a character trait and after satisfying Rule 403's balancing test. *See* I.C., *supra*. As stated above, to establish that evidence is admissible pursuant to Rule 404(b), the party seeking admission must first demonstrate a pattern of relevant conduct that shares unique characteristics. *Berkovich*, 922 F.2d at 1022 (quoting *Benedetto*, 571 F. 2d at 1249).

Again, as with the CCRB investigation, plaintiff has not established a pattern of conduct permitting use of defendants' disciplinary histories under Rule 404(b). Plaintiff has not specified what documents in defendants' disciplinary histories he plans to offer, nor has he described what pattern of conduct he seeks to prove, nor has he established any other permissible purpose for admitting this evidence. Likewise, plaintiff has also not satisfied his burdens under Rules 402 or 403. Given these shortcomings, the court grants defendants' motion to preclude their disciplinary histories.

Furthermore, documentary evidence of defendants' disciplinary histories is not admissible for impeachment

purposes under Rule 608.  Like the CCRB investigation evidence, plaintiff may not introduce extrinsic evidence of prior acts to attack a defendant witness's character for truthfulness.

With respect to prior lawsuits brought against defendants, the relevance of such evidence and the probative-prejudice balancing test depends on the nature of the prior lawsuit, including whether the prior lawsuit is sufficiently related to the instant case, and the purpose for which such evidence will be used at trial.  Unrelated prior lawsuits are unlikely to yield evidence sufficiently probative to overcome the risk of unfair prejudice to defendants or confusing the issues for the jury.  *See, e.g.*, *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 341 (S.D.N.Y. 2011) (precluding plaintiff from inquiring into or offering evidence regarding "unrelated, prior lawsuits" against defendants).  However, evidence of factually similar lawsuits introduced for a permissible purpose under Rule 404(b) may be admitted.  *See, e.g.*, *Bourguignon v. Lantz*, No. 05-CV-0245, 2008 WL 4183439, at *1 (D. Conn. Sept. 10, 2008) (denying motion to exclude evidence of other lawsuits, to the extent the lawsuits were factually similar and were not being offered to show propensity).

Based on the foregoing, the court grants defendants' motion to preclude *unrelated* prior lawsuits against and disciplinary histories of defendants or other non-party

officers.  Plaintiff has not presented the court with specific complaints or civil actions brought against defendants, unrelated or otherwise.  *See Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744, 2005 WL 3435111, at *1 (S.D.N.Y Dec. 12, 2005) (denying vague motions *in limine* because "the Court is unable to determine, with any degree of certainty, whether the [evidence] sought to be excluded from the trial would be inadmissible under any of the provisions of the Federal Rules of Evidence"); *Banushi v. Palmer*, No. 08-CV-2937, 2011 WL 13894, at *2 (E.D.N.Y. Jan. 4, 2011) (precluding plaintiff from admitting evidence under Rule 404(b) where he "provide[d] no details to the court about the nature or content of the records at issue").

### E. Causation Testimony by Plaintiff

Defendants next move, separate and apart from their previous *Daubert* motion, to preclude plaintiff from personally testifying as to causation of his alleged injuries.  (Def. Mem. at 18.)  In support, defendants argue that plaintiff's alleged injuries require expert testimony from a qualified witness to establish causation because the injuries are sufficiently complex.  (*Id.*)  Plaintiff appears to have misread defendants' argument as against plaintiff's witness, Dr. Ali Guy, and not as against plaintiff himself.  (Pl. Opp. at 6.)  As such, plaintiff argues generally for the liberal admissibility of expert evidence, but does not address defendants' argument that a

layperson, *i.e.* Bermudez, may not testify as to causation of the injuries at issue in this case.   (Pl. Opp. at 14.)

As discussed in the court's order deciding defendants' *Daubert* motion, the court has already found that many of plaintiff's alleged injuries are sufficiently complex to require a qualified expert to render a causation opinion.  (*See Daubert* Order at 13.)  Thus, the court grants in part, and denies in part, defendants' motion, consistent with the following. Plaintiff may testify as to his experience and condition immediately following and shortly after defendants' use of force in effecting his arrest.  He may testify to his symptoms, including headaches, visible lacerations, abrasions, or bruises, and pain he experienced, based on injuries he received during his arrest by defendants.  He may not testify as to the cause of his alleged hearing loss, neurological or psychological injuries, or other ailments which he learned of through his treatment by medical experts not subject to cross-examination.

## F. Officer LaSala's Injuries

Defendants next move to preclude plaintiff from introducing evidence of injuries sustained by non-party Officer LaSala while arresting plaintiff under Federal Rules of Evidence 402 and 403.  (Def. Mem. at 20.)  Specifically, defendants argue that evidence of LaSala's injuries could mislead the jury to believe that "something 'bad' or 'wrong' occurred when defendant

Officer Ruiz used the asp," and that the details of LaSala's injuries would be both cumulative and prejudicial. (*Id.* at 22-23.)  Defendants further seek to preclude any mention of medical treatment LaSala received for said injuries as irrelevant under Rule 402.  (*Id.* at 23.)  Plaintiff responds that testimony regarding Officer LaSala's injuries is relevant as it is evidence of the amount of force used during plaintiff's arrest. (Pl. Opp. at 16.)  Alternatively, plaintiff argues that LaSala's deposition testimony is admissible for impeachment purposes. (*Id.*)

The court agrees with plaintiff that evidence of officer LaSala's injuries is relevant to demonstrate the force used during plaintiff's arrest by defendants, including the force used by Officer Ruiz when employing the asp.  However, the court finds that, under Rule 403, the probative value of evidence of injuries to Officer LaSala is substantially outweighed by the risk of confusing issues or misleading the jury and wasting time.  Officer LaSala's injuries cannot be readily extrapolated to determine what injuries may result if the asp is used on other body parts like soft tissue or larger appendages.  Moreover, admission of this evidence would invite jury confusion: this case is about the injuries plaintiff sustained, not Officer LaSala.  As such, defendants' motion is granted.

If Officer LaSala or another Officer witness testifies
that Officer Ruiz did not use an asp, then defendants will open
the door to rebuttal evidence of Officer LaSala's injuries.  In
such case, plaintiff may introduce evidence that Officer
LaSala's fingers were broken but may not introduce evidence that
describes in any detail the specific injuries to and appearance
of his fingers.  Plaintiff may use Officer LaSala's deposition
testimony to impeach him should he testify.

### G. Alternatives to Use of Force

Next, defendants seek to preclude plaintiff from
arguing or offering evidence that defendants could have used
alternatives to the force employed in effecting plaintiff's
arrest under Rules 402 and 403.  (Def. Mem. at 23.)  In support,
defendants attach a transcript of a status conference held
before the Honorable Judge Sydney Stein in the District Court
for the Southern District of New York on May 21, 2018, granting
a defense motion to preclude plaintiff from arguing what
officers should have done differently in an excessive force
case.  (ECF No. 103-1, Def. Mem. Ex. D.) Plaintiff responds that
evidence defendants could have used less force to arrest
plaintiff is probative of whether the force they used was
reasonable.  (Pl. Opp. at 17.)

The analysis in this case "does not include an
evaluation of the choices, or lack thereof, the officer has at

his disposal at the relevant moment." *Estate of Jaquez v. City of New York*, No. 10-CV-2881, 2016 WL 1060841, at *5 (S.D.N.Y. Mar. 17, 2016); *Bancroft v. City of Mt. Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) ("[I]t does not matter that some less intrusive alternative would have done the job."). Considering alternatives here is akin to playing "Monday-morning quarterback" when *Graham* instructs that the fact finder should not do so. *Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, *rather than with the 20/20 vision of hindsight*." (emphasis added)). Thus, the availability of alternatives to defendants is not relevant evidence. Further, permitting plaintiff to inquire into alternative or lesser means of force would also run afoul of Rule 403 by confusing the triable issues before the jury. As such, defendants' motion to preclude evidence and argument regarding this issue is granted.

### H. Other Instances of Alleged Police Misconduct

Defendants seek to preclude plaintiff from eliciting testimony regarding other instances of alleged police misconduct as irrelevant and prejudicial. (Def. Mem. at 24-25.) Plaintiff does not oppose or otherwise respond, and the court grants defendants' motion. At trial the jury must consider plaintiff's claims of excessive force by two officer defendants involved in

his arrest on March 1, 2015, and determine whether their actions violated the Constitution. Testimony and argument regarding police actions not the subject of plaintiff's claims are not relevant to the jury's task. Further, evidence concerning police misconduct in general can be viewed as a form of Rule 404(b) evidence and risks confusion and prejudice under Rule 403, leading the jury to find that *these defendants* acted in conformity with the alleged misconduct of other officers. *See Gogol*, 2018 WL 4616047, at *6. Accordingly, defendants' motion to preclude evidence of other police misconduct is granted.

### I. Suggestion of Specific Damages Award

Defendants move to preclude plaintiff from suggesting a specific dollar amount to the jury with respect to damages during the opening statement, witness testimony, and summation. (Def. Mem. at 25.) Plaintiff opposes this motion, requesting that the court permit him to request the jury award a specific dollar amount or a range. (Pl. Opp. at 19.) Plaintiff further suggests that a curative instruction to the jury may alleviate defendants' concerns regarding the potential for prejudice. (*Id.*)

As plaintiff correctly notes, the determination of whether to allow a plaintiff to request a specific damages amount from the jury is within the court's discretion. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir.

1997).  Although the Second Circuit has not prohibited parties
from suggesting particular damages amounts to the jury, it has
cautioned against this practice.  *See Ramirez v. N.Y.C. Off-
Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) (citing
*Mileski v. Long Island R. R. Co.*, 499 F.2d 1169, 1172-74 (2d
Cir. 1974)); *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d
1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S.
1031 (1996); *see also Thomas v. Medco*, No. 95-CV-8401, 1998 WL
542321, at *15 (S.D.N.Y. Aug. 26, 1998) ("The practice of
requesting a specific dollar amount in damages is disfavored by
the Second Circuit because it risks unfairly swaying the jury by
'anchor[ing] the jurors' expectations of a fair award at a place
set by counsel, rather than by the evidence.'" (quoting
*Consorti*, 72 F.3d at 1016)).

Here, plaintiff has not offered any specific or
persuasive reason for the court to depart from the cautionary
practice in this Circuit and the court shall not.  The court
therefore grants defendants' motion and precludes plaintiff's
counsel from suggesting a specific damages amount in his opening
statement, summation, or through witness testimony, to avoid
anchoring the jury's perspective with respect to damages as
evidence is presented during trial.  Plaintiff may, however,
still present evidence regarding the amount of his economic
damages, if any, but plaintiff may not suggest or state any

dollar amount of non-economic damages regarding pain and suffering or punitive damages.  The court also notes that plaintiff's supplemental answers to interrogatories indicate that he does not seek economic damages for lost wages or medical care.  (ECF No. 100-2, Def. Mem. Ex. B.)

### J. Outstanding Objections

Defendants' objections as to the CCRB files and defendants' disciplinary histories have already been discussed and resolved in the court's decision on defendants' related motions *in limine*.  Defendants raise similar objections as to IAB investigation files, and the court's decision under Rules 402, 403, 404, and 608 precluding the CCRB files and disciplinary histories applies with equal force to the IAB files.  Thus, defendants' objection as to these files is moot. Defendants' objection as to Dr. Guy's expert report is also moot in light of the court's decision on defendants' *Daubert* Motion. (*See Daubert* Order at 18.)  The court now turns to defendants' remaining objections.

<u>Medical Records</u>

Defendants object to plaintiff's introduction of certain medical records, Exhibits 2, 10, 11, and 14, as inadmissible hearsay.  (Def. Obj. at 6.)  In support, defendants argue that although certain hearsay evidence can be admitted under the business records exception of Rule 803(6), plaintiff

has failed to offer a custodian witness to authenticate the records and establish the factors necessary to apply the business records exception. (*Id.* at 7.) Furthermore, defendants argue, even properly authenticated medical records would require an expert to explain the medical records to the jury. (*Id.*)

Medical records constitute hearsay but may, with proper foundation, "be admi[tted] under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995) (citing *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993)); *see also United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). The court sustains defendants' objection but will permit plaintiff the opportunity to attempt to authenticate the records, however, the court notes that plaintiff's witness list identifies no custodian for the records. (*See* JPTO at 4.)

As for defendants' Rule 702 argument, not all information contained in a medical record is beyond the ken of the jury. Nonetheless, should the plaintiff offer evidence from his medical records that falls under Rule 702, he must do so through a qualified expert. Fed. R. Evid. 702. Given the court's decision on defendants' *Daubert* motion, plaintiff is

limited to medical testimony as specified in that decision.
Thus, to the extent plaintiff authenticates the records,
testimony by plaintiff's treating or examining physician shall
be consistent with the court's prior *Daubert* decision.

### Plaintiff's Medical Examination

Finally, defendants object to plaintiff's Exhibit 13,
a medical examination report dated January 16, 2015, and related
to his Department of Motor Vehicles application for a CDL as
inadmissible hearsay.  (Def. Obj. at 8.)  Further, defendants
argue under Rule 403 that, even if it is not hearsay, the
medical examination would mislead the jury to conclude that
plaintiff had no injuries shortly before the March 2015 incident
and that any injuries he endured after the March 2015 incident
must have resulted from his arrest.  (*Id.* at 8-9.)

As with defendants' objection to the medical records
above, plaintiff's CDL medical examination is inadmissible
hearsay unless it is authenticated through a proper custodian
and a proper evidentiary basis for admission is established.
The parties' proposed JPTO does not indicate that plaintiff
plans to call an appropriate custodian.

Even if plaintiff establishes that the business
records exception applies to the CDL examination, he must
nevertheless demonstrate that its probative value is not
substantially outweighed by the risk that it will mislead the

jury.  Whatever probative value the examination evidence carries, presenting the jury with plaintiff's medical examination on the eve of his arrest asks the jury to find that his injuries after the incident must have resulted from defendants' use of force.  That inference would be an impermissible shortcut to proving causation, especially when the court has already found that a qualified medical expert is required to prove causation for many of plaintiff's alleged injuries.  (*See Daubert* Order at 12.)  *Cf*. *Robinson v. Suffolk Cty. Police Dep't*, No. 08-CV-1874, 2011 WL 4916709, at *4 (E.D.N.Y. Oct. 17, 2011) (preventing treating physician from offering causation testimony predicated on bare comparison of spinal scans taken before and after incident giving rise to suit).  The court grants defendants' motion to preclude the January 2015 examination.

## II.     Plaintiff's Motions *in Limine*

### A. Documents Concerning Plaintiff's Arrest and Conviction

Plaintiff moves to preclude defendants from offering certain police records and other documents related to plaintiff's arrest, prosecution, and conviction for his March 1, 2015 conduct as irrelevant and prejudicial.  (Pl. Mem. at 4.) Additionally, plaintiff argues that certain documents related to his arrest constitute inadmissible hearsay and, even if admissible, would be cumulative under Rule 403.  (*Id*. at 12-13.)

Defendants respond that plaintiff's arrest, prosecution, and conviction documents are directly relevant to the reasonableness of the force employed by defendants as they illuminate the circumstances presented to the arresting officers and demonstrate the severity of the crime for which plaintiff was arrested. (Def. Opp. at 4.)

Defendants' approach to relevance in an excessive force case is overbroad. The court agrees that the severity of a crime for which a plaintiff is arrested is relevant insofar as it bears on the circumstances presented to a reasonable officer at the time of the arrest. *Graham*, 490 U.S. at 397; *see also Stephen v. Hanley*, No. 03-CV-6226, 2009 WL 1471180, at *3 (E.D.N.Y. May 21, 2009). By way of example, defendants offer the 911 dispatcher's report, also known as a SPRINT Report, (Ex. X), to argue that the defendants were responding to a report of a "man beating his wife" and thus were aware of the severity of the crime precipitating plaintiff's arrest. (Def. Opp. at 4.) Subject to proof that defendants received this transmission, such evidence would be relevant.

However, trial testimony and documents developed in a related criminal investigation or prosecution are not necessarily relevant to an excessive force case simply because the documents are probative of the severity of the plaintiff's offense conduct. What matters, and what is relevant, are the

facts known to the arresting officers at the time they employed force to arrest plaintiff.  *See Stephen*, 2009 WL 1471180, at *4 (finding plaintiff's subsequent conviction for criminal possession of a controlled substance following his arrest was "irrelevant to whether the [arresting] officers' actions were objectively reasonable before and during the course of the incident at issue").

Though the jury must consider the totality of circumstances, the totality is viewed through the eyes of reasonable officers on the scene of the arrest, and not with "the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396. Ultimately, the question is whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397.  That is, the totality is limited to the circumstances a reasonable officer would be aware of at the time defendants employed force to arrest plaintiff regarding: the severity of the crime; whether plaintiff posed an immediate threat to defendants; and whether plaintiff actively attempted to evade or resist arrest.  *Id.* at 396; *see also Stephen*, 2009 WL 1471180, at *10 ("The offense for which [plaintiff] was subsequently convicted . . . does not provide insight into whether he posed a threat to the safety of the defendants or attempted to evade arrest, and, thus, whether

the defendants' use of force was reasonable."). Thus, relevant and admissible evidence must tend to prove the circumstances confronting defendants leading up to and during plaintiff's arrest.

Documents concerning the events that occurred *after* plaintiff's arrest are unlikely to be relevant under this standard. The severity of plaintiff's crime of arrest, as proven later in a criminal trial, is not relevant for the purposes of evaluating whether defendants' use of force at the time of plaintiff's arrest was reasonable. A photograph of plaintiff's wife and child, for example, taken after plaintiff's arrest and demonstrating injuries the two sustained by plaintiff, may indeed be relevant. But defendants must first establish that they observed the wife and child before encountering and arresting plaintiff, and that the pictures are accurate representations of the conditions of the wife and child at that time.

Because both parties offer only cursory descriptions of the post-arrest evidence stemming from the officers' investigation and plaintiff's prosecution, the court cannot fully rule under Rule 402. As such, the court grants plaintiff's motion without prejudice to defendants to explain the relevance of the exhibits not precluded under the foregoing relevance requirements. The parties shall confer to resolve

their remaining evidentiary disputes, consistent with this order, and be prepared to offer proof at the Final Pretrial Conference if necessary.

Even if defendants establish relevance, the court must still weigh the probative value of such evidence against the risk of unfair prejudice to plaintiff pursuant to Rule 403. The court will rule accordingly should defendants establish the relevance of their offered exhibits. However, the court finds that plaintiff will not suffer *unfair* prejudice from admission of the 911 dispatcher's report in this case because the appropriate or excessive use of force during his arrest is an issue for the jury. Moreover, the 911 evidence would not be offered for the truth of the matter, but instead provide background as to the events leading up to his arrest.

### B. Plaintiff's Past Conduct

Plaintiff next moves to preclude defendants from presenting certain evidence of plaintiff's past conduct as inadmissible character evidence under Federal Rule of Evidence 404. (Pl. Mem. at 6.) Defendants respond that this motion is impermissibly overbroad but nonetheless focus on plaintiff's past conduct related to his status as a parolee. (Def. Opp. at 5.) Defendants argue that plaintiff's alleged status as a parolee is relevant because it explains why he fled officers and resisted arrest. (*Id.*)

As with the court's determination of what is relevant in an excessive force case, plaintiff's status as a parolee may be relevant if defendant officers knew of his parolee status at the time they employed force to arrest him. However, defendants have not so argued and do not otherwise offer a permissible purpose for admission of plaintiff's prior acts or status as a parolee. Moreover, prior act evidence, even if offered for a permissible purpose under Rule 404(b), will likely not be relevant to the jury's determination of whether defendants acted reasonably in effecting plaintiff's arrest. Therefore, the court grants plaintiff's motion.[2]

### C. Photographs of Plaintiff

Plaintiff next moves for the admission of certain photographs of plaintiff, including his booking photograph or mugshot. (Pl. Mem. at 15.) Defendants do not object to the admission of the photographs in general, subject to the laying of a proper foundation. (Def. Opp. at 9-10.) As it appears the parties agree on the admission of plaintiff's booking photographs, the court denies plaintiff's motion as moot.

### D. Plaintiff's Employment Status

Plaintiff moves to preclude testimony related to his unemployment leading up to his March 1, 2015 incident as

---

[2] Neither party addressed whether plaintiff's past conduct evidence would be admissible for impeachment purposes under Rules 608 or 609. The court will rule at such time if defendants offer evidence under either Rule.

irrelevant.  (Pl. Mem. at 16.)  Defendants respond that they do

not intend to offer such evidence other than for impeachment

purposes or if plaintiff opens the door to this topic.  (Def.

Opp. at 10.)  Again, the parties appear to agree on this issue,

and plaintiff does not appear to be seeking damages for lost

income.  The court grants plaintiff's motion to the extent

defendants may attempt to offer evidence of plaintiff's

employment status other than for impeachment.

### E. Testimony of Dr. Friedman

Plaintiff seeks to preclude the expert testimony of

defendants' witness, Dr. David Friedman, because he failed to

perform diagnostic tests on plaintiff.  (Pl. Mem. at 16.)  In

support, plaintiff points to Dr. Friedman's report, disclosed by

defendants during discovery, in which he states audiometry

testing "requires active, willful, and honest patient

participation."  (*See* ECF No. 106-5, Pl. Mem. Ex. E ("Friedman

Rep.") at 3.)  Defendants respond that Dr. Friedman's offered

opinion would assist the trier of fact and point out that

plaintiff cites no legal authority for his argument.  (Def. Opp.

at 11.)

The court agrees with defendants that a failure to

perform diagnostic tests on a plaintiff claiming injury does not

by itself warrant preclusion of an expert's testimony.  Indeed,

plaintiff cites no authority for this position and the court

39

finds no basis in law for it.  "Evaluation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is [injured] even in the absence of a physical examination."  *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 483 (E.D.N.Y. 2011) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994)).

Dr. Friedman's testimony is admissible, and plaintiff is free to cross-examine defendants' expert to dispute the weight and reliability of his opinion, including his lack of an examination of plaintiff.  *See Winter v. Hartford Life & Accident Ins. Co.*, 309 F. Supp. 2d 409, 415 (E.D.N.Y. 2004) ("Because [the medical expert] never examined the plaintiff, his opinions about [plaintiff]'s medical condition are entitled to less weight than the plaintiff's treating physicians who were in a better position to evaluate the extent and severity of her pain.").  Plaintiff's motion to preclude Dr. Friedman's testimony is denied.

### F. Testimony of Captain Edmonds and Officer Hynes

Plaintiff seeks to preclude two NYPD witnesses, Captain Edmonds and Police Officer Hynes, former defendants in this case, from testifying because they were not present during plaintiff's arrest and thus cannot offer relevant testimony. (Pl. Mem. at 16-17.)  Captain Edmonds first interacted with

plaintiff, for the purposes of this lawsuit, in the hospital
while plaintiff was receiving care for injuries allegedly
sustained during his arrest. (*See* ECF No. 106-3, Pl. Mem. Ex. C
at 2.) Officer Hynes, according to plaintiff, was in the back
of a police cruiser and unable to exit the vehicle at the time
of plaintiff's arrest. (Pl. Mot at 17.) Defendants argue in
response that both witnesses would offer relevant testimony, but
do not offer specifics. (Def. Opp. at 12.)

Defendants do not state in their submission what
relevant testimony Captain Edmonds would offer from his personal
observations and interactions with plaintiff after plaintiff's
arrest. As for Officer Hynes, despite his temporary confinement
during the moment of plaintiff's arrest, defendants claim that
he may offer relevant testimony concerning the events leading up
to, and immediately following, plaintiff's arrest, including
plaintiff's flight from responding officers and plaintiff's
demeanor immediately following the incident. Of relevance in
this lawsuit is the knowledge of the defendant officers, not
Officer Hynes. And, to the extent Officer Hynes observed the
same things the defendants did, his testimony could corroborate
defendants' testimony but also would likely be cumulative. As
such, the court grants plaintiff's motion but will permit
defendants at the Final Pretrial Conference the opportunity to

explain the general nature of Captain Edmonds' and Officer
Hynes' expected testimony.

### G. Officer Michuad's Testimony

Next, plaintiff moves to preclude the testimony of
Officer Michaud.  (Pl. Mem. at 17.)  Plaintiff contends that
defendants disclosed Officer Michaud as an individual with
discoverable information after the close of fact discovery.
(*Id.*)  Defendants respond that plaintiff has not shown why
admission of Officer Michaud's testimony would prejudice
plaintiff and has not cited to legal authority for preclusion.
(Def. Opp. at 12-13.)  Defendants further argue that disclosure
was late, by only one day, due to an administrative error and
that Officer Michaud's identity and role in plaintiff's arrest
was known to plaintiff more than a year before fact discovery
ended.  (*Id.* at 13.)

Federal Rule of Civil Procedure 26 requires disclosure
during discovery of the name of "each individual likely to have
discoverable information . . . that the disclosing party may use
to support its claims or defenses, unless the use would be
solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  "If a
party fails to provide information or identify a witness as
required by Rule 26(a) or (e), the party is not allowed to use
that information or witness to supply evidence . . . at a trial,
unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1).  A district court may preclude the
testimony of an untimely-disclosed witness, but must first
consider four factors:

> (1)   the party's explanation for the failure to comply
>       with the [disclosure requirement];
>
> (2)   the importance of the testimony of the precluded
>       witness;
>
> (3)   the prejudice suffered by the opposing party as a
>       result of having to prepare to meet the new
>       testimony; and
>
> (4)   the possibility of a continuance.

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *see
also Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir.
1988).  "Before the extreme sanction of preclusion may be used
by the district court, a judge should inquire more fully into
the actual difficulties which the violation causes, and must
consider less drastic responses."  *Outley*, 837 F.2d at 591.
Preclusion is a harsh sanction, and "fair play may" militate
against preclusion "where failure to comply is due to a mere
oversight of counsel amounting to no more than simple
negligence."  *Id.* (quoting *Cine Forty-Second St. Theatre Corp.
v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.
1979)).

Here, defendants' spare explanation does not tip the first factor in their favor. It is unclear what "administrative error" caused the delayed disclosure and why it is excusable. On the other hand, plaintiff has not made a showing much less an allegation of bad faith, thus suggesting that defense counsels' oversight was due to negligence. As such, the first factor weighs marginally against preclusion as the disclosure was indeed only one day late, indicative of an oversight by defendants' counsel.

Turning to the second factor, defendants argue that Officer Michaud's expected testimony is important as it goes to the severity of plaintiff's crime and his condition following his arrest. Accordingly, the parties' Proposed JPTO, lists Officer Michaud as one of defendants' witnesses and indicates his expected testimony will cover "the events leading up to plaintiff's apprehension [and] plaintiff's apprehension." (JPTO at 5.) The same chart lists one other witness who will testify about the events leading up to plaintiff's arrest, Officer Hynes, and at least five witnesses who will testify as to plaintiff's physical apprehension. (*Id.*) Given this bench of witnesses with similar testimony, it appears Officer Michaud is not of critical importance to defendants' case, and the second factor weighs in favor of preclusion.

As for the third factor, plaintiff is likely to suffer prejudice in preparing to face Officer Michaud's testimony without the benefit of a deposition or timely disclosure. The court notes, however, that this witness was disclosed only one day after the close of fact discovery, and plaintiff could have sought to reopen discovery to obtain a deposition of Officer Michaud. (Pl. Mem. Ex. D.) As further mitigation of their tardy disclosure, defendants assert, and plaintiff does not dispute, that plaintiff received the CCRB investigative file, which described Officer Michaud's involvement, on October 10, 2015. (Def. Opp. at 13.) Plaintiff has had more than a year to address defendants' untimely disclosure but, for unexplained reasons, waited until the eve of trial to seek relief. As such, the third factor weighs against preclusion.

Finally, a continuance in this matter is unlikely given the proximity to trial. It is unclear what prejudice would be cured by a continuance, as plaintiff has not demonstrated prejudice nor requested a continuance. Moreover, "courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess." *Outley*, 837 F.2d at 590 (quoting *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir. 1985)). Nevertheless, the court finds that delaying trial would not serve the aims of either party or the court and is simply not feasible. Thus, this factor weighs

in favor of preclusion as a continuance is impracticable at this
juncture.

Analysis of the factors yields a close call with
neither party offering strong arguments in support of their
positions.  Although the disclosure was late by only one day,
the court is inclined to enforce deadlines and the Federal Rules
of Civil Procedure.  Accordingly, plaintiff's motion is granted
and Officer Michaud may not testify.

### H. Pleadings and Discovery Responses

Plaintiff next moves to preclude defendants from
introducing the pleadings and discovery responses in this case
as hearsay and as potentially prejudicial.  (Pl. Mem. at 18.)
Defendants respond that the pleadings and responses are indeed
sworn statements, are considered party admissions, and are not
hearsay at least for the purpose of impeachment.  (Def. Opp. at
14-15.)

Although plaintiff's Amended Complaint is not a sworn
document, the court agrees with defendants that plaintiff's
pleadings are admissible for impeachment purposes and as party
admissions, excepted from the definition of hearsay.  *See*
*Official Comm. of Unsecured Creditors of Color Tile, Inc. v.*
*Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)
("[A]llegations in the Second Amended Complaint are 'judicial
admission[s]' by which [plaintiff] was 'bound throughout the

course of the proceeding.'" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985))). Plaintiff's verified discovery responses are also admissions and thus admissible. *Skinner v. City of New York*, No. 15-CV-6126, 2017 U.S. Dist. LEXIS 104650, at *14-15, (E.D.N.Y. Apr. 7, 2017) (citing *Shaw v. City of New York*, No. 95-CV-9325, 1997 U.S. Dist. LEXIS 4901, at *7 (S.D.N.Y. Apr. 15, 1997)). Thus, plaintiff's motion to preclude his pleadings and discovery responses is denied and the court will allow defendants to use plaintiff's discovery responses for impeachment purposes.

### I. Motions *in Limine* and Attorney Sidebars

Plaintiff moves to preclude defendants from referring to plaintiff's attempt to exclude certain evidence through the instant motions *in limine* or from admitting statements by attorneys made during sidebar discussions at the depositions in this case. (Pl. Mem. at 19.) In response, defendants represent that they do not intend to do either. (Def. Opp. at 18.) Defendants explain that attorney statements are not evidence, but note that objections made during depositions are preserved for trial. (*Id.*)

As it appears the parties agree on this issue, the court denies plaintiff's motion as moot.

### J. Officer Testimony on Probable Cause

Plaintiff seeks to preclude any testimony from officer witnesses regarding the issue of probable cause in this case. (Pl. Mem. at 19-20.) Plaintiff argues that any opinion offered by the officers as to the existence of probable cause would be testimony in the form of a legal conclusion. (*Id.*) Defendants respond that the legal conclusion plaintiff seeks to preclude— whether probable cause existed for plaintiff's arrest—was already established in plaintiff's criminal trial for the underlying offense. (Def. Opp. at 19-20.) Moreover, defendants argue, the officers involved in plaintiff's arrest are percipient witnesses and should not be precluded from offering eye-witness testimony regarding the facts and circumstances surrounding plaintiff's arrest. (*Id.* at 19.)

As an initial matter, and as discussed above, the court notes that the existence of probable cause is not at issue in this case and neither party may relitigate it. Officer witnesses may testify to their relevant, personal observations in arresting plaintiff and, in so doing, would not necessarily, or improperly, offer a legal conclusion regarding probable cause. Indeed, the jury that convicted plaintiff already determined there was probable cause for his arrest. *Green v. Gonzalez*, No. 09-CV-2636, 2010 U.S. Dist. LEXIS 127817, *7 (S.D.N.Y. Nov. 22, 2010) ("A conviction of the plaintiff following arrest is viewed as establishing the existence of

48

probable cause." (quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986))).  Thus, a witness's testimony made accordingly would not be improper and plaintiff's motion to preclude officer testimony regarding the existence of probable cause is denied. *Cf. Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (finding prosecutor witnesses' opinion as to existence of probable cause inadmissible unless witness's subjective belief regarding the same is relevant to outcome of case).

### K. Outstanding Objections

<u>Relevance</u>

Plaintiff objects to a host of exhibits, 23 in total, under Rules 401 and 402 as irrelevant.  (Pl. Obj. at 2-3.) Specifically, plaintiff objects to: arrest reports, investigation documents, and criminal case files related to his arrest and prosecution for the underlying crime in this case, (Def. Exs. A-E, G, I, K, L, S, V, X); results of a blood test run on the asp used by defendant Officer Ruiz, (Def. Ex. P); photos of plaintiff's wife and child, (Def. Exs. T, U); a parolee chronological report from the New York State Department of Correction and Community Supervision, (Def. Ex. W); transcripts and recordings of plaintiff's phone calls made while incarcerated, (Def. Ex. Z); the Complaint and Amended Complaint in this matter and complaints brought by plaintiff in three civil cases in the Southern District of New York, (Def. Exs. BB-

FF); and any transcript of sworn testimony by plaintiff, (Def. Ex. KK).  (*Id.*)

As an initial matter, defendants respond that they intend to use the complaints from plaintiff's other actions, plaintiff's prison phone calls, and plaintiff's prior sworn testimony, Exhibits BB through FF and Exhibit KK, as impeachment material for purposes of refuting plaintiff's purported damages. (Def. Resp. at 5.)  Accordingly, plaintiff's relevance objections to those six exhibits are overruled and denied to the extent defendants do not offer those exhibits for non-impeachment purposes.

The court has already discussed what is relevant in this matter in addressing plaintiff's motions *in limine* above. *See* II.A, *supra*.  Defendants' blanket assertion that their offered exhibits are part of the "narrative fabric" of plaintiff's arrest and thus contribute to a totality of the circumstances determination does not, by itself, carry defendants' evidentiary burden.  Although defendants' offered exhibits relating to plaintiff's arrest and prosecution may shed some light on the facts presented to a reasonable officer on the scene, the court will not parse through the cursory descriptions both parties have offered for each exhibit to determine its relevance under Rules 401 and 402.

The court cannot rule with specificity on the admissibility of most of these exhibits, or of specific portions of each exhibit. Instead, the parties must confer as to their remaining disputes, and defendants will be given an opportunity to establish during the Final Pretrial Conference the relevance of exhibits not already precluded by this order.[3]

Finally, the court finds that Exhibit P, the blood test of defendant Officer Ruiz's asp, is relevant because it is probative of the conditions of the asp at the time of, or shortly after, plaintiff's arrest and the alleged use of force. Plaintiff's objection to this exhibit is overruled, subject to defendants' laying of a proper foundation and proof of the chain of custody.

### Risk of Unfair Prejudice

Plaintiff also objects to the same 23 exhibits on Rule 403 grounds arguing that their probative value is substantially outweighed by the risk of unfair prejudice to plaintiff. (Pl. Obj. at 3.) Defendants admit that there may be some risk of prejudice to plaintiff given the nature of the crime he was

---

[3] Defendants purpose in offering Exhibits G, K, and L, the criminal court complaint, Certificate of Disposition, and case file related to plaintiff's March 1, 2015 arrest is not clear. Indeed, consistent with the court's determination above, in order to be admissible these three post-arrest, trial—related exhibits must shed light on the circumstances known to a reasonable officer on the scene at the time of plaintiff's arrest. *Rogoz*, 796 F.3d at 246-47 (quoting *Graham*, 490 U.S. at 396). The court is skeptical that defendants will carry their burden, and further notes the risk of unfair prejudice to plaintiff from admitting these documents.

convicted of, but that such prejudice is not unfair and does not substantially outweigh the probative value of the exhibits. (Def. Resp. at 7.)

As the court stated above, the relevance of 22 of the 23 offered exhibits is not immediately clear from the parties' submissions, and that some are likely precluded by the courts *in limine* rulings. And, to determine whether the probative value of each exhibit substantially outweighs the risk of prejudice, the court must first determine the former. As stated above, the parties shall confer to resolve their remaining evidentiary disputes concerning these exhibits prior to the Final Pretrial Conference. The court will then resolve any Rule 403 issues with the remaining relevant exhibits. As for Exhibit P, which the court has found relevant, plaintiff has not established a risk of unfair prejudice substantially outweighing its probative value. Thus, his objection under Rule 403 is overruled.

### Prior Bad Acts

Plaintiff also objects to 12 exhibits consisting of investigation materials in plaintiff's criminal case under Rules 608 and 609 as impermissible impeachment evidence that does not bear on plaintiff's veracity. (Pl. Obj. at 5; Def. Exs. A, C-E, G, K, L, S, V-X, KK.) Defendants once again respond that plaintiff's Certificate of Disposition, (Ex. K), parole documentation, (Ex. W), and prior sworn testimony, (Ex. KK), are

admissible as proper impeachment evidence. (Def. Resp. at 9-10.) The other nine exhibits, according to defendants, are directly probative of a fact at issue in the matter and will not be used solely for impeachment. Defendants offer as a hypothetical that they may offer evidence of plaintiff's parole status to rebut any testimony on direct to the contrary. (*Id.*)

First, plaintiff's prior sworn testimony, (Ex. KK), may be used for impeachment purposes as a prior inconsistent statement under Federal Rules of Evidence 613 and 801(d)(1). Further, Rule 608 does not bar admission of extrinsic evidence for purposes of impeachment by prior inconsistent statement. *See* Fed. R. Evid. 608 advisory committee's note to 2003 amendment (explaining that the Rule's application is limited to proving a witness's character for truthfulness, and that the admissibility of extrinsic evidence offered for other grounds of impeachment, such as contradiction or prior inconsistent statement, is left to Rules 402 and 403); *see also United States v. Rivera*, 273 F. App'x 55, 58 (2d Cir. 2008) ("A witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven."); *United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999). Finally, plaintiff does not explain how his prior sworn testimony would fall under Rule 609.

Thus, plaintiff's objection under Rules 608 and 609 as to this Exhibit is overruled.

Second, and as discussed above, defendants have not established the relevance of the remaining exhibits and the court must determine whether the exhibits may be properly used as impeachment evidence under Rules 608 and 609. As discussed above, Rules 608 and 609 serve as an additional exception to the general prohibition against character evidence in Rule 404(a). Rule 608 permits limited inquiry on cross-examination into a witness's past conduct to prove the witness's character for truthfulness or untruthfulness but prohibits the admission of extrinsic evidence for the same purpose. Fed. R. Evid. 608; *Benedetto*, 571 F.2d at 1250 ("[W]hile a character witness may be asked on cross-examination about 'specific instances of conduct,' such acts may not be proved by extrinsic evidence."). Rule 609, by comparison, permits evidence of a witness's prior criminal conviction for purposes of proving his character for untruthfulness subject to certain limitations regarding the nature of the conviction and its age. Fed. R. Evid. 609.

Under Rule 608, defendants may not impeach plaintiff's credibility as a witness through the admission of any of these exhibits, extrinsic evidence by definition, and would be limited to inquiry on cross-examination. *United States v. Shoreline Motors*, 413 F. App'x 322, 329 (2d Cir. 2011); *see also United*

*States v. Masino*, 275 F.2d 129, 133 (2d Cir. 1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such answer."). As these exhibits constitute extrinsic evidence, plaintiff's objection under Rule 608 is sustained.

Defendants must satisfy Rule 609 to admit extrinsic evidence of plaintiff's conviction, such as case documents, for purposes of impeachment and must also satisfy the Rule's requirements as to the nature and age of the conviction. *E.g.*, Fed R. Evid. 609(a)(1)(A) (requiring admission, subject to Rule 403, of evidence of witness's felony conviction in a civil case); Fed. R. Evid. 609(a)(2) (requiring admission of evidence of witness's conviction involving dishonest act or false statement); Fed. R. Evid. 609(b) (describing limitations applicable to convictions older than 10 years); *see also Fletcher v. City of New York*, 54 F. Supp. 2d 328, 331 (S.D.N.Y. 1999). Defendants have not met their burden by establishing that any of plaintiff's convictions bear on his character for truthfulness, and have not otherwise met Rule 609's requirements. Thus, the court sustains plaintiff's objection under Rule 609.

Turning now to defendants' hypothetical, should plaintiff deny his status as a parolee or his conviction for the underlying offense, he opens the door to extrinsic evidence by defendants, *e.g.* Exhibits K and W, to directly rebut that testimony, subject to Rule 403. *See Benedetto*, 571 F.2d at 1250. However, Rule 403 would prevent defendants from introducing the mass of documents related to plaintiff's criminal conviction for the purposes of such rebuttal as mass admission would be cumulative and risk unfair prejudice.

### Hearsay

Plaintiff next objects, based on hearsay, to many of the same investigative and criminal case documents, (Def. Exs. A, C-E, G, L, V-X), in addition to the 911 dispatcher's report, (Def. Ex. B), Officer Hynes' notes from plaintiff's arrest, (Def. Ex. I), a recording of the IAB's interview of the individual who called 911 in this case, (Def. Ex. N), and the blood test of Officer Ruiz's asp, (Def. Ex. P). (*Id.* at 5-6.)

Defendants respond by pointing to their opposition to plaintiff's motion *in limine* where defendants argued that police reports may be admitted as an exception to the rule against hearsay as business records under Rule 803(6) or as public records under Rule 803(8). (*Id.* at 7.) Alternatively, defendants argue that, in general, when police reports are offered to prove the speaker's state of mind, and not the truth

of the statement, they are not hearsay.  (*Id.*)  In a footnote,
defendants argue that the creator of their offered police
report, Officer Hynes, imputed knowledge from his fellow
officers under the "fellow officer" rule or the "collective
knowledge" doctrine.  (*Id.* at 8 n.6.)

Defendants have not identified which exhibits they
intend to introduce and for what purpose.  However, the burden
to establish that evidence is inadmissible for any purpose, and
thus excludable on a motion *in limine*, is on the movant, *United
States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016), and
plaintiff has not explained why defendants' offered exhibits are
objectionable and why none of the hearsay exceptions apply.
Notwithstanding this shortcoming, the court has already granted
plaintiff's motion *in limine* seeking to preclude as irrelevant
documents related to plaintiff's arrest and prosecution that do
not shed light on the circumstances known to a reasonable
officer on the scene of plaintiff's arrest.  For the same
reason, Exhibit N, the IAB interview of the 911 caller in this
case, is also irrelevant and defendants are precluded from
offering it into evidence.  As such, plaintiff's hearsay
objection to those exhibits is moot.  However, defendants may
establish what hearsay exception, if any, applies to Exhibit P,
the test results for defendant Officer Ruiz's asp, which the

court has already determined is relevant, and to Exhibit B, the 911 dispatcher's report, which the court also finds is relevant.

Regarding defendants' reliance on the "fellow officer" rule, it is unclear how defendants intend to wield this doctrine to demonstrate a defendant officer's state of mind. Defendants state that Officer Hynes drafted his notes based, in part, on "knowledge imputed from his fellow officers." (Def. Opp. at 8 n.6.) However, Hynes' state of mind, whether imputed from his fellow officers or not, is not relevant unless it is communicated to or known by the defendants at the time of plaintiff's arrest. Such evidence, standing alone, is precluded as irrelevant consistent with the court's ruling on plaintiff's motion *in limine* regarding documents in his criminal case. Thus, plaintiff's hearsay objection to Officer Hynes' notes is moot, as well. *See* II.A, *supra.*

### Failure to Disclose

Finally, plaintiff objects to five of defendants' exhibits that were not exchanged during discovery, specifically: his recorded prison calls and associated transcripts, (Def. Ex. Z); complaints he filed in the Southern District of New York, (Def Exs. DD-FF); and any transcript of his sworn testimony, (Def. Ex. KK). Ostensibly, plaintiff objects under Federal Rule of Civil Procedure 37 which permits preclusion of discoverable materials that were not properly disclosed. Fed. R. Civ. P.

37(c)(1); *see also Patterson*, 440 F.3d at 117.  Defendants respond that these exhibits are impeachment evidence not subject to disclosure under Federal Rule of Civil Procedure 26.  (Def. Resp. at 11-12.)  Further, defendants argue that the exhibits at issue are of the sort not exclusively within defendants' control—plaintiff drafted the publicly available complaints through counsel and was party to the recorded phone calls.  (*Id.* at 12.)  Moreover, defendants disavow any plan to use plaintiff's recorded prison calls in their defense case and apparently intend to introduce the calls only for impeachment purposes.

As such, the court overrules plaintiff's objection to Exhibits Z, DD through FF, and KK because impeachment evidence need not be disclosed during discovery.  *See* Fed. R. Civ. P 26(a)(3)(A) ("[A] party must provide to the other parties and promptly file . . . information about the evidence that it may present at trial other than solely for impeachment[.]").

## CONCLUSION

For the foregoing reasons the court grants in part and denies in part the parties' motions *in limine*.  In sum, the court hereby:

> **A. GRANTS:** Defendants' motion to preclude plaintiff from:
>
> > (1) arguing or mentioning claims brought against

previously dismissed defendants, damages attributable
to the same, and arguing that he was not resisting
arrest; (2) introducing evidence from the CCRB
investigation; (3) introducing or inquiring into
unrelated related lawsuits against defendants and
unsubstantiated conduct from defendants' disciplinary
histories; (4) personally testifying as to the cause
of his injuries; (5) introducing evidence of injuries
Officer LaSala sustained during the March 1, 2015
arrest; (6) arguing defendants could have employed
lesser force or alternatives to arrest plaintiff; (7)
mentioning police officer misconduct in general; and
(8) suggesting to the jury a dollar amount for a
damages award.

The court also grants plaintiff's motion to
preclude defendants from introducing: (1) irrelevant
evidence from NYPD's investigation into plaintiff's
arrest and the resulting prosecution; (2) evidence of
plaintiff's employment status and prior unrelated
conduct; (3) testimony from Captain Edmonds and
Officer Hynes, subject to a proffer as to the
relevance of both; and (4) testimony from Officer
Michaud.

**B. DENIES:** Defendants' motion for an instruction that plaintiff's arrest was lawful without prejudice to renew at the charging conference, and to preclude plaintiff from introducing excerpts of the NYPD Patrol Guide.

The court also denies plaintiff's motion to preclude defendants from introducing: (1) testimony from defendants' witness, Dr. Friedman; (2) plaintiff's complaints and discovery responses; and (3) testimony by officer witnesses as to the existence of probable cause at the time of plaintiff's arrest.

**C. DENIES AS MOOT:** Plaintiff's motion: to admit photographs of plaintiff; to preclude evidence of remarks by attorneys during depositions; and to preclude argument regarding the parties' *in limine* motion practice.[4]

**D. SUSTAINS:** Defendants' objection as to plaintiff's introduction of: (1) unauthenticated medical records from Greene Correctional Facility and Medialliance Medical Health Services; (2) a medical examination

---

[4]     The parties have resolved by stipulation defendants' motions regarding indemnification of defendants by the City of New York, and reference to defense counsel as "City Attorneys."

from plaintiff's CDL application; and (3) documents from the IAB's investigation into plaintiff's March 1, 2015 arrest.[5]

The court also sustains plaintiff's objections under Rule 608 and 609 as to Exhibits A, C, B, D, E, G, K, L, S, V, W, and X.

**E. OVERRULES:** Plaintiff's objection under Rules 402 and 403 as to Exhibits P, BB, CC, DD, EE, FF, and KK; plaintiff's objection under Rules 608 and 609 to Exhibit KK; and plaintiff's objection under Federal Rule of Civil Procedure 37 as to Exhibits Z, DD, EE, FF, and KK.

**F. RESERVES:** The court will permit defendants to offer proof at the Final Pretrial Conference as to exhibits that remain in dispute after this order—those that bear on the circumstances known to a reasonable officer on the scene at the time of plaintiff's arrest—and excerpts from the NYPD Patrol Guide. The court will then make its decision under Rules 402 and

---

[5]    Defendants' objections as to the CCRB investigation files, defendants' disciplinary histories, and Dr. Guy's report are moot.

403, and rule on any applicable hearsay objections.

This order is without prejudice and with leave to renew consistent with this opinion. Prior to the Final Pretrial Conference, the parties must confer to attempt to resolve their remaining evidentiary disputes and shall come prepared to offer proof as to those exhibits only.

**SO ORDERED.**

Dated: January 8, 2019
      Brooklyn, New York

                                     /s/
                              _____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York